UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHSAN BAJWA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES LIFE INSURANCE COMPANY,<br><br>Defendant. | No. 1:19-cv-00938-NONE-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. No. 13) |

**INTRODUCTION**

Plaintiff Ahsan Bajwa filed the complaint commencing this breach-of-contract and tort action in the Fresno County Superior Court on June 6, 2019. (Doc. No. 1 at 7.) Defendant United States Life Insurance Company removed the action to this federal court on July 10, 2019 under diversity jurisdiction. (*Id.* at 1–2.) On May 28, 2020, defendant filed a motion for partial summary judgment. (Doc. No. 13.) Plaintiff filed an opposition on July 7, 2020. (Doc. No. 16.) On July 15, 2020, defendant filed a reply brief. (Doc No. 17.)

For the reasons that follow, the court grants, in part, and denies, in part, defendant's motion for partial summary judgment.

/////

/////

/////

1

**BACKGROUND**

**A. Factual Background**

The central facts in this case are not in dispute. Defendant underwrites a group disability-insurance plan sponsored by the American Medical Association, pursuant to which plaintiff received disability insurance. (Doc. No. 16-1 ("Facts") ¶ 1A.)[1] The policy's terms include that it "is issued in and governed by the laws of Illinois," which is where the American Medical Association is incorporated and headquartered. (*Id.* ¶¶ 8A, 12A–13A.)

In 2002, plaintiff submitted a claim for disability benefits under the policy, and he began receiving benefits in 2003. (*Id.* ¶¶ 18A–19A, 5B; Doc. No. 16-2 ¶ 5.) Contemplating purchasing a home, plaintiff contacted defendant on March 6, 2018 to confirm he would continue to receive disability benefits. (*Id.* ¶¶ 7–8.) Plaintiff received a letter from Kathryn Davis, one of defendant's employees, so confirming:

> Please be advised that you are currently receiving long-term disability benefits in the amount of $10,000 monthly.
>
> As long as you continue to meet your Policy's definition of totally disabled, you are eligible to receive this benefit for your lifetime. We will perform annual reviews every year to confirm that you continue to meet the definition of totally disabled.

(*Id.* ¶ 9.)

Based upon the assurance provided in this letter and a belief that he would receive $10,000 per month for the rest of his life, plaintiff applied for financing to purchase a home and subsequently purchased the financed home. (*Id.* ¶¶ 10–12.) On September 7, 2018, plaintiff received another letter from Davis, informing him that his monthly benefits were being reduced to $2,500 because he had turned 65. (*Id.* ¶ 13.)

/////

---

[1] Docket entry 16-1 contains both plaintiff's responses to defendant's "Undisputed Facts and Supporting Evidence" and plaintiff's "Additional Material Facts and Supporting Evidence." Both are numbered by paragraphs, beginning at paragraph 1. Defendant did not file a reply to this statement. When this order cites to one of defendant's Undisputed Facts and Supporting Evidence, it will add an "A" to the end of the paragraph number. When this order cites to one of plaintiff's Additional Material Facts and Supporting Evidence, it will add a "B" to the end of the paragraph number.

**B.     Procedural Background**

Plaintiff filed suit in state court on June 6, 2019, alleging four causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligent misrepresentation; and (4) fraud. (Doc. No. 1 at 7.) The court will refer in this order to plaintiff's claims 1 and 2 as the "Contractual Claims" and to claims 3 and 4 as the "Misrepresentation Claims." In his Contractual Claims, plaintiff alleges that defendant was required to continue paying $10,000 disability payments each month for the rest of his life, and defendant's failure to do so breached both the contract and the implied covenant of good faith and fair dealing. In the Misrepresentation Claims, plaintiff further alleges that defendant's sending a letter confirming plaintiff's benefits but then changing its position with respect to the amount of those benefits after plaintiff relied on it constitutes negligent misrepresentation and fraud.

Defendant filed a general denial in the state court proceeding, asserting several affirmative defenses and then removed the action to this federal court. (Doc. No. 1 at 1, 27–31.) On May 28, 2020, defendant filed the pending motion for partial summary judgment. Plaintiff filed an opposition, (Doc. No. 16), to which defendant filed a reply with an *ex parte* application for an extension of time to file its reply, which the court granted. (Doc. Nos. 17, 18, 19.)

## DISCUSSION

**A.     Preemption of Plaintiff's Misrepresentation Claims**

Defendant seeks summary judgment in its favor with respect to plaintiff's Misrepresentation Claims on the grounds that those claims are preempted by § 155 of the Illinois Insurance Code, 215 Ill. Comp. Stat. § 5/155 ("§ 155"). In this regard, defendant argues it is entitled to partial summary judgment as to plaintiff's Misrepresentation Claims because they are based "on allegations of US Life's unreasonable and wrongful handling of his disability claim under the Policy and failure to pay him a specified monthly disability benefit for his lifetime due under the Policy," which, according to defendant, "is exactly the conduct governed by [§] 155." (Doc. No. 13-1 at 19.) Because analysis of this contention of defendant involves other issues posed by the pending motion, the court will address it first and assumes for purposes of resolving this issue that Illinois law applies.

3

Illinois Insurance Code § 155(1) sets maximum recoverable amounts for actions brought against insurance companies related to certain vexatious or unreasonable behavior:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action [certain maximum amounts.]

In light of that statute, it appears Illinois does not recognize an independent tort claim against insurers for breach of the implied covenant of good faith and fair dealing because § 155 "provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under the policy." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902 (Ill. 1996). However, § 155 does not preempt "a separate and independent tort action involving insurer misconduct." *Id.* at 900. In *Cramer*, the Supreme Court of Illinois determined that "[w]ell-established tort actions, such as common law fraud, require proof of different elements and remedy a different sort of harm than the statute does" and are thus not preempted. *Id.* at 902. The court in *Cramer* concluded that the statute's purpose is "to provide a remedy for insurer misconduct," *id.* at 901, and specifically, misconduct regarding the payment of claims:

> Although some companies are very liberal in the payment of claims, this is by no means true of all. In the absence of any allowance of attorneys' fees, the holder of a small policy may see practically his whole claim wiped out by expenses if the company compels him to resort to court action, although the refusal to pay the claim is based upon the flimsiest sort of a pretext.

*Id.* at 901 (quoting H. Havinghurst, *Some Aspects of the Illinois Insurance Code,* 32 Ill. L. Rev. 391, 405 (1937)).

On the other hand, the court in *Cramer* recognized that "[m]ere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort. Courts therefore should look beyond the legal theory asserted to the conduct forming the basis for the claim." *Id.* at 904.

/////

4

Thus, under the decision in *Cramer* the following standard is to be applied: § 155 preempts tort claims against insurers for misconduct regarding the payment of claims or for unreasonable and vexatious conduct. However, it does not preempt claims for well-established torts that require proof of different elements and remedy a different sort of harm than misconduct involving payment of claims. This determination depends on the conduct a plaintiff alleges, not the legal theory cited in support thereof.

Defendant contends that § 155 does not preempt his Misrepresentation Claims because they are alternatives to his Contractual Claims. (Doc. No. 16 at 26.) Thus, according to plaintiff, even if plaintiff's Contractual Claims fail, his alternative Misrepresentation Claims still survive, and thus they are independent and separate torts from his Contractual Claims. (*Id.*)

As a starting point, plaintiff's Misrepresentation Claims require proof of different elements than his Contractual Claims. According to plaintiff, in Illinois the elements of fraud are: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury." (Doc. No. 16 at 27 n.1 (quoting *Siegel v. Levy Organization Development Co.*, 607 N.E.2d 194 (Ill. 1992).)[2] Plaintiff further contends that the elements for negligent misrepresentation differ only as to the required mental state. (*Id.* (citing *Kopley Grp. V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218 (Ill. Ct. App. 2007).) Those elements do not require proof of a breach of contract. Thus, plaintiff contends, his Misrepresentation Claims "require proof of different elements" than his Contractual Claims. *See Cramer*, 675 N.E.2d at 902.

Plaintiff relies upon the decision in *Commonwealth Ins. Co. v. Stone Container Corp.*, No. 99 C 8471, 2001 WL 477151 (N.D. Ill., May 3, 2001), where the court found a tort was independent for § 155 purposes because it was an alternative to a contract claim. There, Stone Container, a pulp and paper manufacturer, was looking to purchase insurance for its paper mill.

---

[2] Defendant does not challenge this assertion.

5

*Id.* at *1. It received a marketing brochure from Industrial Risk Insurers which stated that in its experience, the greatest risk facing pulp and paper mill insureds was loss caused by fires and explosions in pulp digesters. *Id.* Stone Container then bought insurance from Industrial Risk Insurers. *Id.* Thereafter, Stone Container's pulp digester exploded, causing death and damages, but Industrial Risk Insurers took the position that the losses from the explosion were not covered by the policy. *Id.* Stone Container sued Industrial Risk Insurers for misrepresentations in that brochure under Illinois Consumer Fraud and Deceptive Practices Act. *Id.* Industrial Risk Insurers argued that the claim was preempted by § 155. The court disagreed:

> IRI attempts to paint Count XXIV as a classic refusal-to-pay claim which alleges only unreasonable and vexatious conduct—a claim that would only exist under Section 155. This characterization of Count XXIV is incorrect, however. Stone Container does not allege that IRI issued a policy and then refused to pay a loss covered thereby. It alleges (**as an alternative to its contract claims**) that IRI knowingly issued a policy that did not cover the loss in question while fraudulently representing that the loss was covered. As such, Count XXIV does not allege a mere breach of contract or an unreasonable failure to pay a valid claim; it alleges fraudulent inducement to enter into an insurance contract. In our view, such deceptive marketing practices are clearly actionable as independent torts under the rule in *Cramer*.

*Id.* at *3 (citation omitted) (emphasis added).

As a result of this interpretation, Stone Container's claims were allowed to proceed because Stone Container alleged as an alternative to its contract claims that Industrial Risk Insurers was liable for fraudulent inducement. This alternative was an independent tort because it did not allege that Industrial Risk Insurers breached the contract or unreasonably failed to pay a valid claim. *See id.* Likewise, here, plaintiff alleges defendant engaged in conduct causing harm separate from failing to pay: knowingly incorrectly telling plaintiff that it would pay him $10,000 per month, leading him to act in reliance upon that representation. Plaintiff's theory of liability as to this claim does not require defendant to owe him anything under the policy. Thus, as in *Stone Container*, plaintiff's Misrepresentation Claims present an alternative to his Contractual Claims and are accordingly not preempted by § 155.

This alternative-theory distinction is in line with the statute's purpose, which is to help claimants bring claims against insurance companies for small amounts, *see Cramer*, 675 N.E.2d

6

at 901 (citing Havinghurst, *supra*, at 405). A claim is viable under the statute only if the insurance company is liable under the policy. *Martin*, 742 N.E.2d at 857. Thus, § 155 remedies harms that insurance companies cause by failing to pay amounts they owe. Legal claims that are valid even when an insurance company is not liable under the relevant policy thus "remedy a different sort of harm than the statute does." *Cramer,* 675 N.E.2d at 902.

In moving for summary judgment, defendant cites to the decision in *Sieron v. Hanover Fire & Cas. Ins. Co.*, 485 F. Supp. 2d 954 (S.D. Ill. 2007), several times. There, the plaintiffs claimed that the insurance company entered into a settlement agreement to prevent them from bringing claims, but then failed to pay under that settlement agreement. *Id.* at 961. Indeed, the plaintiffs had "premise[d] their [tort] claims on their settlement agreements with [the defendant]" and sought to recover under the settlement agreement. *Id.* Those claims were clearly contractual. But here, plaintiff's Misrepresentation Claims are outside the scope of the parties' contract because, as in *Stone Container*, plaintiff brings alternative tort theories that are not based on defendant's failure to pay. (Doc. No. 16 at 26.) Thus, plaintiff's Misrepresentation Claims are not premised on the terms of the agreement with defendant. Rather, they are premised on defendant's other conduct.

Defendant argues that plaintiff's Misrepresentation Claims are dependent upon the Contractual Claims since in his complaint, plaintiff alleges that defendant breached the contract because the March 16, 2018 letter from Kathryn Davis constitutes waiver or estoppel. (Doc. Nos. 1 at 12–13 (complaint); 13-1 at 19 (defendant's argument).) However, defendant's technical argument in this regard contravenes the liberal pleading rules in federal court. *See* Fed. R. Civ. P. 8(d)(1) ("No technical form [of pleading] is required."), 8(e) ("Pleadings must be construed so as to do justice."); *Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1031 (S.D. Cal. 2018) ("It is settled law that pleadings must be construed liberally in order to prevent errors in draftsmanship or the like from barring justice to litigants. Such pleadings must be construed favorably to the pleader and judged by substance rather than form." (quoting *Mut. Creamery Ins. Co. v. Iowa Nat. Mut. Ins. Co.*, 427 F.2d 504, 507–08 (8th Cir. 1970))). In any event, plaintiff concedes that this theory is an alternative to his negligent misrepresentation claim. (Doc. No. 16 at 26.) Thus,

7

plaintiff agrees that he cannot prevail on the claim that the letter constitutes waiver or estoppel *and* on his negligent misrepresentation claim.

The other cases defendant relies upon in moving for summary judgment on these claims are also unavailing. *Heller International Corporation v. Sharp*, 857 F. Supp. 627 (N.D. Ill. 1994), was decided before *Cramer* and noted that "that the Illinois Supreme Court has not yet addressed the precise scope of Section 155 preemption," *id.* at 629. Thus, that decision fails to support defendant's pending motion. In *Western Howard Corp. v. Indian Harbor Insurance Co.*, No. 1:10-cv-7857, 2011 WL 2582353 (N.D. Ill. June 29, 2011), relied upon by defendant, the "[p]laintiff's fraud claims [we]re based on Indian Harbor's failure to pay in accordance with its obligations under the policy and to fairly investigate the claim." *Id.* at *5. As discussed above, that is simply not the case here. Defendant next cites to the decision in *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 400 (7th Cir. 2011), for the proposition that a fraud claim is preempted when it fails "to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise." Defendant's reliance on *Greenberger* fails for two reasons. First, plaintiff's claims here do not depend on the contractual promise. In fact, plaintiff's Misrepresentation Claims allege that defendant misrepresented the nature of the contractual promises. Second, the court in *Greenberger* did not interpret § 155, *id.* at 398–99 and, in light of that, defendant nonetheless fails to explain why its holdings apply to this case. Finally, defendant refers to the decision in *Cafferty Clobes Merriwether & Sprengel, LLP v. XO Commc'ns Servs., Inc.*, 190 F. Supp. 3d 765 (N.D. Ill. 2016), *aff'd*, 850 F. 3d 840 (7th Cir. 2017), which in turn cites to the decision in *Greenberger*. *Cafferty*, like *Greenberger*, does not interpret § 155. Again, defendant does not explain the relevance of the decision in *Cafferty* to resolution of their pending motion.

**B.     Choice of Law**

Defendant also seeks summary judgment in its favor on the ground that the policy's choice-of-law clause is enforceable and that all of plaintiff's claims arise under Illinois law. (Doc. No. 13 at 2 (issue 1).) As explained below, the court finds that the policy's choice-of-law clause is valid and enforceable and that plaintiff's Contractual Claims are governed by Illinois

8

law.  However, defendant has not carried its burden of establishing that Illinois law governs the Misrepresentation Claims.  As a result, the court will grant in part and deny in part this aspect of defendant's motion for summary judgment.

1. Choice-of-Law Clause

Because the court is sitting in diversity, the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), applies.  Thus, the court must follow California's choice-of-law rules to determine controlling substantive law.  *Fields v. Legacy Health Sys.,* 413 F.3d 943, 950 (9th Cir. 2005); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (citing *Erie* at 74–77).

When considering a contractual choice-of-law provision, California follows the Restatement (Second) of Conflicts of Laws § 187.  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465–66 (1992).  The first step in that analysis is to "examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of [the plaintiff] fall within its scope."  *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001).

A contractually chosen state's law will be applied to the relevant claims if (1) that state has a substantial relationship to the parties or their transaction and (2) that state's law does not conflict with a fundamental policy of California.  *Nedlloyd*, 3 Cal. 4th at 465–66 (citing Restatement (Second) of Conflicts of Law § 187(2)).  Although not relevant here, if there is such a conflict, then the chosen state's laws will be enforced only if that state has a materially greater interest in determining the particular issue.  *Id.*

The proponent of the clause bears the burden of establishing that the claims fall within its scope and a substantial relationship to the chosen state.  *Wash. Mut.*, 24 Cal. 4th at 916–17; *Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124, 1129 (N.D. Cal. 2008), *aff'd*, 350 F. App'x 108 (9th Cir. 2009).  Once the proponent meets those initial burdens, the opponent must establish that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in determining the issue.  *Wash Mut.,* 24 Cal. 4th at 917.

/////

/////

a. *Scope of Clause*

In California, "[t]he scope of a contract's choice-of-law clause is determined by the body of law identified in the agreement, unless the agreement specifies a different scope." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) (citing *Wash. Mut.*, 24 Cal. 4th at 916 n.3). Defendant, as the proponent of this clause, must establish its scope. *See Wash. Mut.*, 24 Cal. 4th at 916; *Kaltwasser*, 543 F. Supp. 2d at 1129.

A choice-of-law clause in Illinois "will not be construed to govern torts as well as contract disputes unless it is clear that this is what the parties intended." *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002) (quoting *Kuehn v. Childrens Hosp., Los Angeles,* 119 F.3d 1296, 1302 (7th Cir. 1997)). However, "tort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause." *Id.* at 862.

Here, the parties agree that the scope of the clause—which states that the policy is "governed by the laws of Illinois," (Facts ¶ 8A)—includes plaintiff's Contractual Claims. Plaintiff argues, however, that his Misrepresentation Claims fall outside the scope of that choice-of-law clause. Because Illinois law governs the agreement, it also determines the clause's scope. *See JMP Sec. LLP*, 880 F. Supp. 2d at 1036 ("The scope of a contract's choice-of-law clause is determined by the body of law identified in the agreement, unless the agreement specifies a different scope." (citing *Wash. Mut.*, 24 Cal. 4th at 916 n.3)).

The court concludes that the clause in this case is like the one in *Medline*, which stated that "this agreement shall be subject to English Law." 230 F. Supp. 2d at 862. The court there found that there was no clear intent to cover torts because the drafters chose not to use language that "encompass[es] all claims 'arising out of' the contractual agreement . . . ." *Id.* The same is true here. Instead of using broad language, such as "the policy, and all claims arising out of the policy, are governed by the laws of Illinois," the drafters simply stated the policy is "governed by the laws of Illinois." Accordingly, as in *Medline*, the scope of the parties' generic choice-of-law clause does not include torts. *See also* John F. Coyle, *The Canons of Construction for Choice-of-*

/////

*Law Clauses*, 92 Wash. L. Rev. 631, 666–67 (2017) (discussing the scope of "generic" and broadly worded choice-of-law clauses).

Even though the scope of the clause does not encompass tort claims, in Illinois, any "tort claims that are *dependent* upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause." *Medline*, 230 F. Supp. 2d at 862. Thus, as plaintiff argues, (*see* Doc. No. 16 at 19–20), the question is whether plaintiff's Misrepresentation Claims are independent or dependent of his Contractual Claims.

Plaintiff argues, without explanation, that his Misrepresentation Claims are independent of his Contractual Claims. (*See id.*) Defendant's reply does not address the issue. (*See* Doc. No. 17.) According to the court's independent research, "[i]n deciding whether a tort claim is 'dependent' upon a contract, courts examine whether: (1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract." *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006).

Consideration of the second and third factors here clearly favor finding the Misrepresentation Claims are dependent on the contract: the claims are closely related to the contractual relationship and the claims could not exist without the contract. The answer is less clear with respect to consideration of the first factor. At least for § 155 purposes, plaintiff's Misrepresentation Claims are separate and independent from his Contractual Claims. Questions remain as to whether the analysis the same for these purposes and how this factor weighs against the others. Defendant bears the burden to answer those questions and it has not done so, choosing not to address these issues. Accordingly, the court will deny defendant's motion to the extent it seeks summary adjudication that resolution of plaintiff's Misrepresentation Claims are governed by Illinois law.

        b.    *Enforceability as to Contractual Claims*

As mentioned above, the parties agree that the scope of the clause—which states that the policy is "governed by the laws of Illinois" (Facts ¶ 8A)—applies to plaintiff's Contractual Claims. The analysis here is relatively straightforward. As noted, the choice-of-law clause will

11

be enforced if the chosen state—Illinois—has a substantial relationship to the parties or their transaction and the relevant law does not contradict a fundamental policy of California. *Nedlloyd*, 3 Cal. 4th at 465–66. Plaintiff, as the non-proponent, bears the burden of showing any contradictory fundamental policy. *See Wash. Mut.*, 24 Cal. 4th at 917.

The sponsor and policyholder, the American Medical Association, is incorporated and headquartered in Illinois. (Facts ¶¶ 8A, 12A–13A.) Plaintiff has not shown any contradictory fundamental policy. In fact, plaintiff agrees that the Illinois law governs his Contractual Claims. (Doc. No. 16 at 8, 20–21.) Thus, the court will grant defendant's motion to the extent it seeks summary adjudication and court determination that Illinois law governs the Contractual Claims.

### 2. Choice of Law for Misrepresentation Claims

Defendant appears to contend that regardless of the choice-of-law provision, courts still are to apply the law of the state of where the group policy was delivered or the headquarters of the policyholder—here, Illinois. (*See* Doc. No. 13-1 at 14 (arguing that case law supports its position "even in the absence of an express choice-of-law provision").) Plaintiff argues that there is no conflict between California and Illinois law, so there is no need to resolve this issue. (Doc. 16 at 19–20.)

When considering choice-of-law issues in the absence of a governing contractual clause, California courts conduct a governmental-interest analysis. *Kearney v. Saloman Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006). Although there are three steps to the analysis, here, the court must only consider the first: "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *Id.* If the laws of the states are the same, there is no need to consider the rest of the test. *See Isuzu Motors Ltd. v. Consumers Union of U.S. Inc.*, 12 F. Supp. 2d 1035, 1043 (C.D. Cal. 1998) ("[T]here is no conflict if the same outcome would be reached under the laws of each of the states involved."); *Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 580 (1974) ("The fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical.").

/////

Defendant, as the proponent of foreign law, bears the burden of demonstrating it applies. *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) ("By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims.").

Here, plaintiff contends Illinois and California law with respect to his Misrepresentation Claims are the same. (Doc. No. 16 at 20–21.) Defendant does not cite to any specific difference in the law of the two states in this regard.[3] Reading defendant's motion liberally, defendant might contend that Illinois and California law differ because under Illinois law, § 155 preempts plaintiff's Misrepresentation Claims. However, as discussed above, § 155 does not preempt plaintiff's Misrepresentation Claims. Thus, defendant has not established any conflict between Illinois and California law.

Instead of conducting California's analysis, defendant argues that in insurance cases concerning group policies, there is a general rule in favor of applying the law where the policyholder is located. Defendant cites to the Restatement (Second) of Conflict of Laws § 192 ("§ 192"). (Doc. No. 13-1 at 13–15.) Under § 192, "[t]he validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for . . . ." Comment h applies this concept to group life insurance policies, noting that one's "rights against the insurer are usually governed by the law which governs the master policy." *Id.* cmt. h. Section 192 also applies to disability insurance. *Id.* cmt. *i*. Thus, if California courts apply § 192, Illinois law

/////

---

[3] Defendant argues that "[p]laintiff concedes in his Opposition that Illinois law applies to this dispute . . . ." (Doc. No. 17 at 5.) The court finds this to be an overly broad characterization of plaintiff's opposition. Instead, plaintiff contends that there is no difference between California and Illinois law as to his Misrepresentation Claims and that the court therefore need not continue the analysis. (Doc. No. 16 at 8, 20–21.) This is not the same as conceding that Illinois law governs the Misrepresentation Claims. However, as discussed below, defendant will be permitted to raise this issue again, if necessary, at an appropriate time.

would govern, because the insured (*i.e.*, the American Medical Association, which is the group policyholder in this case) is located in Illinois.

However, defendant cites no precedent establishing that California has adopted § 192. Most of the cases cited by defendant are clearly distinguishable in that they are applying the law of other states or are dealing with a choice-of-law provision. *See Orchin v. Great-West Life & Annuity Ins. Co.*, 133 F. Supp. 3d 138, 147–48 (D.D.C. 2015) (District of Columbia law and noting the argument concerns choice-of-law clause); *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1218, 1228 (W.D. Wash. 2014) ("The parties do not dispute that the Master Policy under which Plaintiff's Certificate of Insurance was issued contains a choice-of-law provision providing that it is issued and governed under the laws of Virginia."); *Bradley v. Old Repub. Life Ins. Co.*, 712 F. Supp. 90, 93 (S.D. Miss. 1988) (Mississippi law); *Pound v. Ins. Co. of N. Am.*, 439 F.2d 1059, 1062 (10th Cir. 1971) (New Mexico law); *Simms v. Metro. Life Ins. Co.*, 685 P.2d 321 (Kan. Ct. App. 1984) (Kansas law); *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 457–61 (Ill. 1975) (Illinois law).

Other decisions cited by defendant are somewhat more relevant to the issue before this court but still do not carry the day. For instance, defendant relies upon the decision in *Boseman v. Connecticut General Life Insurance Co.*, 301 U.S. 196 (1937). There, the court considered a group-insurance contract with a choice-of-law clause that selected Pennsylvania law. *Id.* at 199–200. The policy was delivered to a corporate employer in Pennsylvania. The court noted that its decision to enforce the clause was supported by the policy preference of ensuring that the contract has the same meaning for all insureds. *Id.* at 206. Defendant cites the policy objectives in *Boseman* and contends that "*Boseman* remains good law." (Doc. No. 13-1 at 15.) If defendant means *Boseman* reflects a sound policy choice, that might be true. But the court must apply existing law, not policy preferences. However, if by its argument defendant means that *Boseman* requires this court to choose to apply Illinois law notwithstanding California's approach, defendant is mistaken. *Erie* overruled *Boseman*. *See John Hancock Mut. Life Ins. Co. v. Schroder*, 349 F.2d 406, 407 (5th Cir. 1965) (Judge Friendly) (describing *Boseman* as "one of the last gasps of *Swift v. Tyson*, 41 U.S. 1 (1842)" (citation shortened)); *New England Mut. Life Ins.*

14

*Co. v. Gray*, 786 F.2d 406, 408 (6th Cir. 1986) (holding *Boseman* is "no longer valid general federal common law" because it was overruled by *Erie*). Under the *Erie* doctrine, the court is bound by California's choice-of-law rules. *Klaxon*, 313 U.S. at 496 (citing *Erie* when describing conflict-of-laws approach). While other jurisdictions might have adopted an approach in line with *Boseman*, it appears clear that California has not.

Likewise, defendant's citation to *Monson v. Life Insurance Company of North America*, 558 F. Supp. 1354 (D. Nev. 1983), which favorably cited *Boseman*, is unavailing. That case noted the policy preferences and found that *Boseman* applied. *Id.* at 1356. But the case did not apply any California choice-of-law rules.

Finally, defendant cites to *Wissot v. Great-West Life & Annuity Ins. Co.*, 619 F. App'x 603, 604–05 (9th Cir. 2015).[4] There, the Ninth Circuit discussed § 192 in applying California choice-of-law rules. However, the court did not find that California had adopted § 192; rather, it was considering whether California or Illinois had a greater interest in applying its law given a conflict. *See id.* The same can be said of the decision in *Meshi v. United States Life Ins. Co. in the City of New York*, No. 8:18-cv-00172-JVS-JDE, 2018 WL 7473961 (C.D. Cal. Dec. 10, 2018).

In sum, the court finds that defendant has not carried its burden of showing that Illinois law governs resolution of plaintiff's final two claims. The court will therefore deny that aspect of defendant's motion for partial summary judgment as well.[5]

## C. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second cause of action is for a breach of the implied covenant of good faith and fair dealing. (Doc. No. 1 at 14–16.) Defendant moves for summary judgment in its favor as to this cause of action, arguing that such a covenant is preempted by § 155. (Doc. No. 13-1 at 17–18.) Plaintiff agrees that § 155 is a statutory remedy preempting his second claim. (Doc. No. 16

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[5] To be precise, the court concludes only that defendant has not carried its burden on summary judgment. Defendant may nonetheless raise this issue again at an appropriate time.

at 28.) However, plaintiff argues that he has pleaded a cause of action under § 155. (*Id.* at 28–29.)[6]

In reply, defendant does not appear to contest plaintiff's argument that he has brought a claim under § 155. (*See* Doc. No. 17 at 6 ("Because Plaintiff fails to allege an independent tort separate from his breach of contract *and Section 155 claims . . . .*" (emphasis added).) Thus, the court will grant defendant's motion for summary judgment on the specific issue that § 155 preempts plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Nonetheless, the parties agree that plaintiff is still proceeding with a claim brought under § 155 in light of the liberal pleading standards applied in federal courts.

**D.      Forfeiture of Affirmative Defense**

Plaintiff argues that § 155 provides an affirmative defense, and that defendant forfeited that defense by failing to raise it in its answer. (Doc. No. 16 at 14–15.)

"While state law defines the nature of the defenses, the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Healy Tibbitts Const. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982). Defendant argues it did not forfeit the affirmative defense but also does not specifically address whether its argument under § 155 is an affirmative defense. (Doc. No. 17 at 6–10.)

"The test for whether a defense is an affirmative defense which must be plead[ed] is whether the defense gives color to the opposing party's claim and then asserts new matter by which the apparent right is defeated." *Ferris Elevator Co. v. Neffco, Inc.*, 674 N.E.2d 449, 452 (Ill. Ct. App. 1996). A defense that "does not give color to the plaintiff's claim, but rather attacks the sufficiency of that claim" is not an affirmative defense. *Worner Agency, Inc. v. Doyle*, 459 N.E.2d 633, 636 (Ill. Ct. App. 1984).

Here, the court concludes that § 155 does not provide color to plaintiff's claim for breach of the implied covenant but rather goes to the sufficiency of that claim. The parties agree that

---

[6] As noted above, § 155 "provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under the policy." *Cramer*, 675 N.E.2d at 902.

16

§ 155 preempts such claims, which makes plaintiff's claim insufficient from the outset. Therefore, the court also concludes that § 155 is not an affirmative defense in this action. As a result, defendant did not forfeit it by failing to plead it in its answer.

**CONCLUSION**

Accordingly,

1. Defendant's motion for partial summary judgment, (Doc. No. 13), is GRANTED IN PART and DENIED IN PART;
2. The court concludes that Illinois law governs plaintiff's claim for breach of contract and claim for breach of the implied covenant of good faith and fair dealing;
3. Section 155 of the Illinois Insurance Code preempts plaintiff's claim for breach of the implied covenant of good faith and fair dealing; and
4. Defendant's motion for partial summary judgment is denied in all other respects.

IT IS SO ORDERED.

Dated: **June 28, 2021**

UNITED STATES DISTRICT JUDGE