1
2
3
4
5
6
7

8       UNITED STATES DISTRICT COURT

9       EASTERN DISTRICT OF CALIFORNIA

10

11  AHSAN BAJWA,                                Case No. 1:19-cv-00938-JLT-SAB

12              Plaintiff,                       ORDER GRANTING DEFENDANT'S MOTION
                                                FOR SUMMARY JUDGMENT OR PARTIAL
13          v.                                  SUMMARY JUDGMENT

14  UNITED STATES LIFE INSURANCE
    COMPANY, and DOES 1 through 50,
15  inclusive,

16              Defendants.

17

18                            **I. INTRODUCTION**

19          In this action, Plaintiff challenges the reduction in his monthly disability benefit payments

20  under a group disability insurance policy. Plaintiffs contends that despite that the Policy provided

21  for his monthly total disability payment to be reduced upon his turning 65 years old, Defendant

22  was estopped from doing so. Defendant seeks summary judgment, in large part because it

23  contends that Plaintiff cannot support that estoppel applies. For the reasons discussed below, the

24  Court **GRANTS** Defendant's motion for summary judgment in its entirety.

25                            **II. BACKGROUND**

26  **A.      Factual Background**

27          Plaintiff was a physician and member of the AMA in 1992 when he applied for and was

28  approved for group disability insurance sponsored by the AMA and underwritten by Sentry Life

                                           1

Insurance Company.  (Defendant's Undisputed Fact (UF) & Plaintiff's Response to Undisputed Fact (RUF) 1-6.) The Sentry policy contained a provision reducing the monthly indemnity amount to the greater of $1,000 or 25% of the monthly indemnity amount, upon the insured reaching age 65.  (*Id*.)

In 1997, the Sentry policy expired and was replaced with the Policy at issue[1]. As in the previous policy, the Policy provided lifetime long-term disability insurance benefits that were reduced when the claimant turned 65 to the greater of $1,000 or 25% of the Scheduled monthly benefit (hereinafter the "Benefit Reduction Provision").  (UF & RUF 7-8, 11; *see also* Plaintiff's Additional Material Fact (PAMF) & Defendant's Response to Plaintiff's Additional Material Fact (RAMF) 1.)

On March 17, 2002, Plaintiff became totally disabled and his claim for disability benefits under the Policy, was approved and would remain in force for as long as he remained totally disabled.  (UF & RUF 13; PAMD & RAMD 2, 3.)  Also in 2002, Plaintiff was placed under a conservatorship, as to his person and estate, by the Fresno County Superior Court.[2]  Plaintiff was a conservatee in 2018 and at the time he initiated this action in 2019.  (UF & RUF 31.) Plaintiff received Policy disability benefits of $10,000/month from July 2002 through August 2018.  (UF & RUF 13; PAMD & RAMD 2, 3, 4.)

In February 2018, Plaintiff and his wife Fakhra Bajwa agreed to be co-borrowers with their son Hissan Bajwa to purchase a home for him and his wife because Hissan could not qualify for the loan alone.  (UF & RUF 37, 41; PAMF & RAMF 6, 7.) Consequently, Plaintiff and Fakhra applied to be co-borrowers on the loan to purchase a home at 1259 Hoover Street in Menlo Park, California.  (UF & RUF 38; PAMF & RAMF 6, 7.)

At this time, claims under the Policy were handled for Defendant by representatives of The Hartford as third-party administrator (hereinafter the "TPA").  (UF & RUF 14, 15; PAMF & RAMF  9.) On March 6, 2018, Plaintiff or Fakhra called the TPA's Senior Ability Analyst

---

[1] It is group disability insurance policy G189,553 sponsored by the AMA and underwritten by Defendant. Plaintiff was issued Certificate No. 0030155172.

[2] The Court takes judicial notice of the docket of events and hearings in Fresno Superior Court Case No. 02CEPR00947, Ahsan Bajwa (CONS/PE), available at *https://publicportal.fresno.courts.ca.gov /FRESNOPORTAL/Home/WorkspaceMode?p=0*, last visited March 27, 2024; Fed. R. Evid. 201.

1   Kathryn Davis and requested a benefit verification letter to support the loan application, which

2   Davis prepared and emailed to Plaintiff that same day, stating in part:

> Please be advised that you are currently receiving Long Term
> Disability benefits in the amount of $10,000 monthly.
>
> As long as you continue to meet your Policy's definition of Totally
> Disabled, you are eligible to receive this benefit for your lifetime.

6   (UF & RUF 15, 16; PAMF & RAMF 9, 10, 11.) In preparing the March 6, 2018 Letter, Davis

7   inserted into a letter template the current monthly benefit amount being received by Plaintiff and

8   the maximum duration of his benefits.  (UF & RUF 19.)

9        On March 7, 2018, Fakhra called Davis and stated that Plaintiff had not received the

10  March 6 Letter. Fakhra requested it be sent to her e-mail address, and Davis obliged. Plaintiff was

11  not copied on the email. (UF & RUF 17, 18.) Fakhra also emailed the March 6 Letter to Hissan

12  (UF & RUF 47), who sent it to his lender (*id.*; *see also* PAMF & RAMF 18). The next day, the

13  loan was approved, and Plaintiff acquired an interest in and financed a portion of the Hoover

14  Street Property.  (UF & RUF 26, 27, 28, 35, 39, 40, 41; PAMF & RAMF 19.) Four months later,

15  Plaintiff turned 65 years old.  (UF & RUF 24.)

16       On September 7, 2018, Davis sent Plaintiff a letter (hereinafter the "Benefit Reduction

17  Letter") advising that his monthly disability payment under the Policy would reduce from

18  $10,000 to $2,500 as of September 1, 2018, which was the Certificate anniversary after he turned

19  65 years old; the Benefit Reduction Letter referenced the Benefit Reduction Provision in the

20  Policy.  (UF & RUF 25, 30; PAMF & RAMF 15, 16, 20.) Plaintiff, through counsel, first

21  requested reconsideration, and then appealed the reduction in monthly benefit payments.  Plaintiff

22  asserted that waiver and estoppel theories, based upon the March 6 Letter, precluded Defendant's

23  reliance on the Policy's Benefit Reduction Provision; and that Plaintiff relied upon the March 6

24  Letter when he and the others acquired the Hoover Street Property.  (UF & RUF 26, 27, 28;

25  PAMF & RAMF 22, 33.)

26       On January 29, 2019, the Defendant through the TPA denied Plaintiff's request for

27  reconsideration.  (PAMF & RAMF 37.) On February 26, 2019, Defendant, through the TPA's

28  Appeals Specialist Nancy Hyndman, upheld the benefit reduction on appeal, citing as grounds the

1  Policy's Benefit Reduction Provision.  (UF & RUF 29; PAMF & RAMF 39.) Plaintiff continues

2  to receive a monthly disability benefit under the Policy in the amount of $2,500.  (UF & RUF 30.)

3  **B.     Procedural Background**

4          Plaintiff, in his individual capacity, filed the Complaint in the Fresno County Superior

5  Court, seeking damages including exemplary damages, attorneys' fees and costs, and other just

6  and proper relief.  (Doc. 1 at 7-21.) Defendant served its general denial in the state court

7  proceeding, asserting nineteen affirmative defenses, and then removed the action to this Court.

8  (*Id.* at 1-5, 27-32.)

9          Defendant then moved for partial summary judgment that the Policy's choice of Illinois

10  law governed Plaintiff's Complaint, and that the Complaint's common law insurance bad faith

11  causes of action (i.e., causes of action two through four) were precluded by Illinois law.  (Docs.

12  13 through 13-4.) The Court granted the motion in part, ruling that Illinois law governs the first

13  cause of action for breach of contract and the second cause of action for breach of the implied

14  covenant of good faith and fair dealing, and that Section 155 of the Illinois Insurance Code

15  preempts the second cause of action.[3]  (Doc. 22 at 12, 17.)  The Court denied the motion, without

16  prejudice, in all other respects, finding that (1) the third and fourth causes of action were not

17  preempted by Section 155, and (2) whether Illinois law governed the third and fourth causes of

18  action remained in dispute.  (*Id.* at 6, 9, 15, 17.)

19                          **III. LEGAL STANDARD**

20          The court "shall grant summary judgment if the movant shows that there is no genuine

21  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

22  Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Semegen v. Weidner*,

23  780 F.2d 727 (9th Cir. 1985); *Ambat v. City & Cnty. Of San Francisco*, 757 F.3d 1017, 1031 (9th

24  Cir. 2014). A fact is material when, under the governing substantive law, it could affect the

25  outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about

26  a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for

27

---

28  [3] As more fully discussed below, Illinois Insurance Code Section 155(1) sets maximum recoverable amounts for actions brought against insurance companies related to "vexatious or unreasonable" behavior.

the nonmoving party." *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").

The movant always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden by (1) presenting evidence that negates an essential element of the nonmoving party's case, or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 325) (when the non-moving party bears the burden of proof at trial, the moving party need only point out to the district court "[t]hat there is an absence of evidence to support the nonmoving party's case.").

If the evidence offered in support of the motion establishes every essential element of the moving party's claim or defense, there is no need to offer evidence to negate or disprove matters on which the opposing party has the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323. If the movant fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970); *see also Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1072 (N.D. Cal. 2012) (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)) (same); *eOnline Global, Inc.*, 387 F. Supp. 3d at 984 (same).

If the moving party meets this initial burden, however, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 242, 252) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion

1  cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

2  Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to

3  interrogatories, and admissions on file," designate "specific facts showing that there is a genuine

4  issue for trial." *Celotex Corp.,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The Court must

5  assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts*

6  *Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).  However, where circumstantial evidence is presented,

7  the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See*

8  *Anderson*, 477 U.S. at 249–50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d

9  626, 631-32 (9th Cir. 1987).

10  Although the party opposing summary judgment is entitled to the benefit of all reasonable

11  inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if

12  believed, would be sufficient to support a judgment for the nonmoving party." *Am. Int'l Grp.,*

13  *Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836-37 (9th Cir. 1991).  The nonmoving party must

14  introduce some "significant probative evidence tending to support the complaint." *Summers v.*

15  *Teichert & Son, Inc.,* 127 F.3d 1150, 1152 (9th Cir. 1997). In diversity actions, the state law

16  creating the right sued upon governs issues such as the elements of the cause of action, measure

17  of damages, applicable defenses, etc.  *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1065 (9th

18  Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003).

19  ## IV. DISCUSSION

20  Defendant asserts that the first and second causes of action fail under the controlling

21  Illinois law.  As to the first cause of action, Defendant asserts there was no breach of the Policy

22  because it reduced Plaintiff's benefit payment, according to the terms of the Policy, upon his

23  reaching age 65.  Defendant asserts that: (1) Plaintiff is chargeable with the Policy's Benefit

24  Reduction Provision, (2) the Benefit Reduction Provision was not waived by the March 6 Letter,

25  and (3) the March 6 Letter did not estop it from relying on the Benefit Reduction Provision to

26  reduce Plaintiff's benefit payments.

27  As to the second cause of action, Defendant observes the Court previously found it states

28  only a statutory claim under Illinois Insurance Code Section 155.  Defendant asserts the second

cause of action fails because in the absence of its breach of the Policy, there can be no "vexatious or unreasonable" conduct under Section 155. Defendant asserts that the third and fourth causes of action fail under the substantive law of California because: (1) the March 6 Letter did not include any misrepresentation or deception, but instead correctly stated the then current benefit and duration of Plaintiff's disability benefits; (2) if, *arguendo*, the March 6 Letter included a misrepresentation or deceptive statement, Defendant was unaware of such; and, (3) Plaintiff did not reasonably and justifiably rely on the March 6 Letter in relation to the Hoover Street Property transaction.[4]

Finally, Defendant asserts that Plaintiff is not entitled to California Civil Code Section 3294 punitive damages as claimed in the second and fourth causes of action because (1) punitive damages are unavailable under Illinois Insurance Code Section 155 which controls the second cause of action, and (2) punitive damages are unavailable under the fourth cause of action because it is not chargeable with any malicious, oppressive, or fraudulent conduct.

Plaintiff argues that Defendant's reduction in disability benefits payments breached the Policy and violated Illinois Insurance Code Section 155 because Davis's March 6 Letter waived, or estopped Defendant from asserting the Policy's Benefit Reduction Provision. Plaintiff also asserts that Defendant is liable in tort because he reasonably and justifiably relied upon the March 6 Letter's false promise of $10,000 per month benefit payments for this lifetime of total disability when he participated in the Hoover Street Property transaction; he would not have entered that transaction absent the false promise; and as a result of the improper September 1, 2018 reduction in benefit payments to $2,500 per month, he is in peril of defaulting on the Hoover Street Property and is damaged otherwise.

**A.    Evidentiary Objections**

Both parties have objected to evidence proffered by the other.  In moving for or opposing summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary

---

[4] As discussed below, the parties implicitly stipulate to the application of California law.  *See* n.20, *post*.

1  judgment, a party does not necessarily have to produce evidence in a form that would be

2  admissible at trial, as long as the party satisfies the requirements of [Federal Rules of Civil

3  Procedure 56].”); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting *Block*, 253

4  F.3d at 418–19) (same); *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119-20

5  (E.D. Cal. 2006) (even if the non-moving party’s evidence is presented in a form that is currently

6  inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the

7  moving party’s objections could be cured at trial).

8          With respect to evidence submitted by declaration, “[a]n affidavit or declaration used to

9  support or oppose a motion must be made on personal knowledge, set out facts that *would be* [but

10  not necessarily are] admissible in evidence, and show that the affiant or declarant is competent to

11  testify on the matters stated.”  Fed. R. Civ. P. 56(c)(4) (emphasis added).  Under this standard,

12  “when evidence is not presented in an admissible form in the context of a motion for summary

13  judgment, *but it may be presented in an admissible form at trial*, a court may still consider that

14  evidence.”  *Cherewick v. State Farm Fire & Cas.,* 578 F. Supp. 3d 1136, 1155 (S.D. Cal. 2022)

15  (citing *Burch*, 433 F. Supp. 2d at 1120 (citing *Fraser*, 342 F.3d at 1037 (emphasis in original).

16  Thus, in ruling on a motion for summary judgment, the court considers only evidence that is

17  admissible at trial.  Fed. R. Civ. P. 56(c).

18          The Court relies only upon evidence it deems to be admissible.  To the extent the objected

19  to items of evidence are not relied upon by the Court herein, the objection also is overruled as

20  moot.  *See Am. Guard Servs., Inc. v. First Mercury Ins. Co.,* No. CV 15-9259 PA (PJWX), 2017

21  WL 6039975, at n.5 (C.D. Cal. Apr. 14, 2017), *aff’d,* 741 F. App’x 407 (9th Cir. 2018). However,

22  the Court declines to go through the voluminous objections otherwise.

23  **B.      First Cause of Action – Breach of Contract**

24          Plaintiff alleges: (1) the March 6, 2018 Letter was Defendant’s promise that the

25  $10,000/month benefit  payment Plaintiff received prior to reaching age 65 would continue for his

26  lifetime as long as he remained totally disabled; (2) the Letter either waived the Policy’s Benefit

27  Reduction Provision or estops Defendant from asserting it, and (3) Defendant’s September 1,

28  2018 reduction in disability benefits, from $10,000 per month to $2,500 per month upon his

1   reaching age 65, breached the Policy because the Benefit Reduction Provision was no longer

2   enforceable.  (Doc. 1 at 10-14.)

3       Defendant asserts that: (1) Davis, a senior ability claims analyst for its TPA who authored

4   the March 6 Letter, was not authorized to change the terms of the Policy; (2) neither it nor Davis

5   intended to waive the Benefit Reduction Provision; (3) Plaintiff did not rely upon the March 6

6   Letter by participating in the Hoover Street Property transaction; and (4) Illinois law does not

7   allow an insured's use of equitable theories like waiver and estoppel to expand policy coverage or

8   as standalone causes of action for money damages.  (Doc. 48-1 at 14-18; Doc. 51 at 2.)

9       As noted, the Court previously found that Illinois law controls the first and second causes

10  of action.  (*See* Doc. 22.)  Under Illinois law, to succeed on a breach of contract claim:

> [A] plaintiff must plead and prove (1) the existence of a valid and
> enforceable contract, (2) substantial performance by the plaintiff,
> (3) breach by the defendant, and (4) damages caused by that breach.
> *Ivey v. Transunion Rental Screening Sols., Inc.*, 2022 IL 127903, ¶
> 28, ⸺ Ill. Dec. ⸺, ⸺ N.E.3d ⸺, *hearing denied* (Jan. 23,
> 2023); *see also Hernandez v. Illinois Inst. Of Tech.*, 63 F.4th 661,
> 667 (7th Cir. 2023).

15  *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C864, 2023 WL 4297644, at *6 (N.D. Ill. June

16  29, 2023); *see also Moore v. Sentry Life Ins. Co.*, No. 3:22-CV-02892-MAB, 2023 WL 4422879,

17  at *3 (S.D. Ill. July 10, 2023) (same); *Dual-Temp of Ill., Inc. v. Hench Control, Inc.,* 821 F.3d

18  866, 869 (7th Cir. 2016) (same).  The court's focus throughout this four-element inquiry "is to

19  give effect to the parties' intentions."  *Hess v. Bresney*, 784 F.3d 1154, 1159 (7th Cir. 2015).  A

20  defendant's failure to comply with a duty imposed by the contract gives rise to the breach.  *Id.*

21      Additionally, an Illinois insured is chargeable with knowledge of all unambiguous terms

22  and conditions in the policy:

> [U]nder Illinois law, it is well-established that insureds "bear the
> burden of knowing the contents of their insurance policies," and
> that "[e]ven if they do not read the policy, they are deemed to know
> the information the policy contains." *Babiarz v. Stearns*, 404 Ill.
> Dec. 880, 57 N.E.3d 639, 653 1st Dist. 2016) ("We do not excuse
> the burden of knowing the contents of an insurance policy where
> there are no allegations that it was ambiguous."); *see also Garrick
> v. Mesirow Fin. Holdings, Inc.*, 374 Ill. Dec. 49, 994 N.E.2d 986,
> 994 (1st Dist. 2013) ("Illinois law places a burden on the insured to
> know its needs for coverage and the contents of its insurance
> policies.").

*Great Lakes Reinsurance (UK) v. 1600 W. Venture, LLC*, 261 F. Supp. 3d 860, 863 (N.D. Ill. 2017). "[The] insured cannot blame the insurance company for its failure to read the policy to discover the requirements for bringing suit.  It is not the duty of the insurer to inform the insured of his duties."  *Id.* citing *Foamcraft, Inc. v. First State Ins. Co.*, 238 Ill. App. 3d 791, 793-94 (1st Dist. 1992).

### 1.   **Plaintiff's Policy provides for Benefit Payment Reduction at Age 65**

The parties agree that in 1992, Plaintiff applied for and was accepted into a group disability insurance plan sponsored by the AMA and underwritten by Sentry Life Insurance Company.  (UF & RUF 1, 2.)  Thereunder, Plaintiff became insured for a monthly indemnity of $10,000 per month, which reduced to $2,500 per month at age 65.  (UF & RUF 3, 4, 5, 6.)  In 1997, the Sentry policy expired and was replaced by the Policy issued by Defendant, under which Plaintiff eligible as a previous insured of Sentry.  (UF & RUF 7.)

There is no dispute that the Policy included the Benefit Reduction Provision which, just as in the Sentry policy, reduced the monthly indemnity from $10,000 per month to $2,500 per month at age 65.  (UF & RUF 8, 10.)  Also, the Court finds no dispute that a duplicate of Plaintiff's Policy Certificate of insurance including the Schedule of Coverage was mailed to Plaintiff at his home in Fresno not later than 2013.  (UF & RUF 10, 11, 12.)

Though Plaintiff points to evidence the TPA, upon its review of the claim file, did not find in the file any communication to Plaintiff prior to September 2018 concerning the reduction of benefits at age 65 (*see* RUF 10 citing Doc. 50-29 at 3), such evidence does not address or reasonably raise an inference that the Policy including its Benefit Reduction Provision was not issued to Plaintiff and provided to him.  Notably, the TPA expressly stated the Policy included the Benefit Reduction Provision (*id.*), and James Savaiano[5] attested to mailing a duplicate of the Policy Certificate to Plaintiff's home in Fresno on March 21, 2013 (*see* Doc. 48-7 at 4).

### 2.   **The March 6 Letter did not Waive the Benefit Reduction Provision**

Plaintiff alleges the March 6 Letter was Defendant's express or implied waiver of the

---

[5] Mr. Savaiano has been the Manager of Customer Care since June 10, 1996 for AMA Insurance Agency, Inc., a subsidiary of the AMA which administers its disability income insurance plan. (Doc. 48-7)

1   Benefit Reduction Provision.  (Doc. 1 at 12.) Defendant asserts that the equitable doctrine of

2   waiver cannot be used to recover greater benefits than payable under the Policy, or as a basis to

3   recover monetary damages from breach of contract.  (Doc. 48-1 at 16-18; Doc. 51 at 3-5.)

4   Defendant also asserts that it did not voluntarily and intentionally relinquish that Provision, either

5   expressly or by implication, and thus there was no waiver.  (Doc. 48-1 at 18 citing *Chatham Corp.*

6   *v. Dann Ins.,* 812 N.E.2d 483, 494 (Ill. App. Ct. 2004)) ("Waiver consists of either an express or

7   implied voluntary and intentional relinquishment of a known right.").)[6]

8          **a.     Davis had no Actual or Apparent Authority to Waive the Benefit**

9   **Reduction Provision**

10         Defendant points to evidence, undisputed by Plaintiff, that only its officers had authority

11   to change or waive a provision in the Policy (UF & RUF 9); Davis was a claims analyst employed

12   by the TPA (UF & RUF 16); and in preparing the March 6 Letter, Davis inserted into a template

13   Plaintiff's then current benefit payment amount and the maximum duration of his benefits (UF &

14   RUF 19). Defendant also points to evidence that it reviewed and upheld the September 1, 2018

15   benefit reduction after Plaintiff requested reconsideration and appealed (UF & RUF 26-29) as

16   evidence that is consistent with Davis's limited authority.

17         Plaintiff points to the March 6 Letter, arguing that Davis had authority to issue it, and that

18   the Letter itself implicitly promised a lifetime $10,000 per month benefit payment that is

19   inconsistent with any intention other than waiver of the Benefit Reduction Provision.  (Doc. 50 at

20   16-17, citing PAMF 9-10, 14-16.)  Especially so, Plaintiff argues, given the TPA's *post hoc* claim

21   review notes admitting that the March 6 Letter raised an inference of waiver (*see* Doc. 50 at 16-17

22   citing PAMF 35, 36, 39), and the fact that Letter was requested to support a long-term obligation

23   in the form of a mortgage loan (Doc. 50 at 16-17).

24         It is settled that under Illinois law:

25              Waiver is an equitable principle invoked to further the interests of
                justice whenever a party initially relinquishes a known right or acts
26              in    such    a    manner    as    to    warrant    an    inference    of    such

---

27   [6] The Court need not and does not reach Defendant's contention that the doctrine of waiver is unavailable on grounds
     its use would increase coverage and benefits paid under the Policy or allow recovery of the same monetary relief
28   sought for breach of the Policy.

1
2
3
4
5

> relinquishment." *Lumbermen's Mut. Cas. Co. v. Sykes*, 384 Ill.App.3d 207, 219, 322 Ill.Dec. 167, 890 N.E.2d 1086, 1097 (2008) (internal quotation marks omitted). "A waiver may be either express or implied, arising from acts, words, conduct, or knowledge of the insurer." *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill.2d 307, 326, 290 Ill. Dec. 218, 821 N.E.2d 269, 282 (2004). Implied waiver occurs "when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Id.*

6   *Stewart v. Nw. Mut. Life Ins. Co.*, 180 F. Supp. 3d 566, 572 (N.D. Ill. 2016). Here, as in *Stewart*,

7   the insurance policy underlying the dispute expressly limited to only authorized persons the

8   ability to make changes to the policy.  The Court finds no dispute that Plaintiff's claim for

9   disability benefits was handled by Defendant's TPA.  (UF & RUF 14.)  Neither the TPA nor

10   Davis was authorized to change terms in the Policy.  (UF & RUF 9, 16, 23; *see also* Doc. 48-4 at

11   88; Doc. 48-6 at 21; Doc. 48-8 at 64.)  For example, the undisputed evidence shows that the

12   TPA's appeal specialist lacked authority to waive the Benefit Reduction Provision because

13   Defendant's review and approval of the specialist's recommendation was required.  (Doc. 50-14

14   at 14-15, 26-27; Doc. 50-31 at 1; PAMF & RAMF 37.)

15         It is also undisputed that Davis was authorized by Defendant only to process claims

16   pursuant to the Policy.  (UF & RUF 9, 16; *see also* Doc. 48-4 at 56-58.)  Davis, a senior ability

17   claims analyst for the TPA, responded to the phone request by Plaintiff or Fakhra for disability

18   benefit verification in the context of a mortgage loan; prepared and emailed the March 6 Letter to

19   Plaintiff that same day; and emailed it to Fakhra the next day.  (UF & RUF 9, 15, 16, 17, 18.)

20         Apparent authority is that authority which a reasonably prudent person, in view of the

21   principal's conduct, would naturally suppose the agent to possess.  *See Graver v. Pinecrest*

22   *Volunteer Fire Dep't*, 2014 IL App (1st) 123006 ¶ 17, (Ill. App. Ct. 2014) (quoting *Amcore Bank,*

23   *N.A. v. Hahnaman-Albrecht, Inc.*, 326 Ill. App. 3d 126, 137 (Ill. App. Ct. 2001)) (To prove

24   apparent authority under Illinois law, a litigant must show that "(1) the principal . . . knowingly

25   acquiesced in the agent's exercise of authority; (2) based on the actions of the principal and the

26   agent, the third person reasonably concluded that the party was an agent of the principal; and (3)

27   the third person justifiably and detrimentally relied on the agent's apparent authority).

28         Plaintiff has not identified any evidence of Defendant's words or conduct suggesting that

1   Davis was authorized to waive the Benefit Reduction Provision on behalf of Defendant.  *See*

2   *Stewart*, 180 F. Supp. 3d at 572 citing *State Sec. Ins. Co. v. Burgos*, 145 Ill. 2d 423, 432 (1991)

3   ("Apparent authority arises where a principal creates, through words or conduct, the reasonable

4   impression that the putative agent has been granted authority to perform certain acts). Instead, the

5   undisputed record reflects that Defendant limited Davis's authority to implementing the Policy;

6   Defendant upheld Davis's September 1, 2018 benefit payment reduction, pursuant to the Policy;

7   and Plaintiff continues to receive the reduced disability benefit.  (*See* UF & RUF 25-30.)  Thus,

8   the Court finds on the undisputed record that Davis did not have actual or apparent authority to

9   waive, and thus did not waive, the Benefit Reduction Provision.[7]

10      **3.      Defendant is not Equitably Estopped from Asserting the Benefit Reduction**

11   **Provision**

12      Plaintiff alleges that his reliance upon the clear and express promise of the March 6 Letter

13   of entitlement to a $10,000 per month benefit payment for his lifetime of total disability estops

14   Defendant from enforcing the Benefit Reduction Provision.  He points to evidence that Davis

15   knew the Letter was for use by a mortgage lender as raising an inference that Defendant knew

16   Plaintiff and the lender would rely on the Letter's promised benefit payments and intended such

17   reliance.[8]  (Doc. 1 at 12-13; Doc. 50 at 18 citing PAMF Nos. 12, 13, 17-19, 36); *see also* PAMF

18   & RAMF 9; Doc. 48-4 at 50-53, 154.)

19      Defendant argues that the equitable doctrine of estoppel cannot be used to recover greater

20   benefits than payable under the Policy, or as a basis to recover monetary damages from breach of

21   contract.  (Doc. 48-1 at 16-18; Doc. 51 at 3-5.)  It asserts that Plaintiff did not rely on the Letter

22   by participating in the Hoover Street Property transaction because (1) Plaintiff does not remember

23   the Letter, and (2) Plaintiff was unaware of the terms and conditions of his participation in that

24   transaction.  (*See* Doc. 48-1 at 19-20); *see also Boyer v. Buol Properties, LLC.,* 22 N.E.3d 389,

---

25   [7] The Court need not and does not reach the further issue of intent to waive the Benefit Reduction Provision.

26   [8] To the extent Plaintiff may allege promissory estoppel, the allegation fails as a matter of law.  In Illinois, promissory
     estoppel is unavailable where, as here, the relief sought is on an existing contract.  *See Stewart*, 180 F. Supp. 3d at

27   575 citing *Saletech, LLC v. E. Balt, Inc.*, 2014 IL App (1st) 132639 ¶ 33 (2014) (because promissory estoppel
     provides a means to enforce promises unsupported by consideration; it is not intended to give a party to a negotiated

28   commercial bargain a second bite at the apple in the event it fails to prove breach of contract[.]").

405 (Ill. App. Ct. 2014) (the party claiming estoppel bears the burden of proving the requisite elements by clear and unequivocal evidence).  It asserts that in any event, Plaintiff reasonably could not have relied on the March 6 Letter as a promise of lifetime benefit payments of $10,000 per month because the Policy's Benefit Reduction Provision is expressly to the contrary.  (Doc. 48-1 at 20.)[9]

      **a.**      **Plaintiff did not Reasonably Rely on the March 6 Letter by Participating in the Hoover Street Property Transaction**

Defendant asserts the undisputed record shows that Plaintiff did not rely upon the March 6 Letter, and that any such reliance would have been unreasonable as contrary to the Policy's express Benefit Reduction Provision.  Defendant points to evidence in the record that Plaintiff has been under a state law conservatorship of his person and estate from and after 2002; that at times relevant herein Plaintiff lacked the ability to contract and incur debt, did not involve himself in financial and legal matters, and did not know the extent of his financial assets; that Plaintiff decided to participate in the Hoover Street Property transaction prior to March 6, 2018; and that Plaintiff did not remember the March 6 Letter, did not review the loan documents relating to the Hoover Street Property transaction, and did not know whether he incurred financial obligation in the Hoover Street Property transaction, but instead left all such matters to his representatives, his wife and co-conservator Fakhra, and his son Hissan.  (*See* UF 17, 18, 31, 32, 33, 34, 37, 38, 42, 43, 44, 45, 46, 47, 48; *see also* Doc. 48-4 at 5, 6-7, 12, 16, 122, 139, 154-155, 174.)

Plaintiff responds that facts in the record raise at least an inference that he entered the Hoover Street Property transaction in reliance upon the March 6 Letter's promised lifetime total disability benefit payment of $10,000 per month; that Defendant knew he would rely upon the Letter; and that the Letter reasonably lulled him into believing Defendant would not enforce the Benefit Reduction Provision.  (*See* Doc. 50 at 18 citing PAMF 12, 13, 17-19, 36); *see also* Doc. 48-4 at 50-53, 154; PAMF 9.)

To succeed under the doctrine of estoppel in Illinois in the insurance context, a plaintiff

---

[9] The Court need not and does not reach Defendant's contention that the doctrine of estoppel is unavailable on grounds its use would increase coverage and benefits paid under the Policy or allow recovery of the same monetary relief sought for breach of the Policy.

1    must prove the following: "(1) that he was misled by the acts or statements of the insurer or its

2    agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable;

3    and (4) detriment or prejudice suffered by the insured based on the reliance." *Chaudhry v.*

4    *Provident Life & Accident Ins. Co.,* No. 12 C 5838, 2014 WL 3511529, at \*21 (N.D. Ill. July 16,

5    2014) (citing *Lumbermen's Mut. Cas. Co.,* 384 Ill. App.3d at 224). Equitable estoppel is based

6    upon an insurer's conduct that misleads the insured to his detriment. *Great Lakes Reinsurance*

7    *(UK),* 261 F. Supp. 3d at 864. Estoppel is a doctrine that is invoked to prevent fraud and

8    injustice. *Carey v. City of Rockford* (1985), 134 Ill. App. 3d 217, 218.

9        The Court finds it is undisputed that: Plaintiff has been the subject of a conservatorship of

10   his person and estate since 2002; Plaintiff did not have the capacity to contract and incur debt at

11   the time of the Hoover Street Property transaction; and, Plaintiff could not have relied on the

12   March 6 Letter by participating in the Hoover Street Property transaction because he was legally

13   disabled from participation in his individual capacity. (*See* UF & RUF 17, 18, 31, 32, 33, 34, 37,

14   38, 42, 43, 44, 45, 46, 47, 48; *see also* Doc. 48-4 at 5-7, 12, 16; Cal. Prob. Code §§ 1872-1876;

15   *Wilhelm v. A.G. Edwards & Sons, Inc.,* No. 02 C 0031, 2002 WL 1377568, at \*4 (N.D. Ill. June

16   24, 2002), *aff'd,* 61 F. App'x 272 (7th Cir. 2003) ("According to Illinois law . . . a contract

17   executed after [an adjudication of incompetence] is void as against [the incompetent] person and

18   ... his estate", 755 Ill. Comp. Stat.. 5/11a-22(b).).

19       Plaintiff has not pointed to contrary evidence in the record.[10] Rather, Plaintiff's proffer

20   appears to concede Plaintiff's lack of contractual capacity. For example, Fakhra avers that "I

21   worked with our son, and participated in multiple conversations wherein our son and I did our

22   best to keep my husband apprised of the ongoing efforts to purchase the [Palo Alto/Menlo Park]

23   home. Although my husband suffers from a mental disability and has been under a

24   conservatorship since 2002, I find it is important to his wellbeing and sense of self-worth to try

25   and keep him involved and informed, as best as possible, on such important matters." (Doc. 50-2

26   at 2.)

27   ────────────────

28   [10] Though Defendant disputes Plaintiff's total mental disability (*see* PAMF & RAMF 2), the parties do not dispute
     that he had been under a California Conservatorship of body and estate since 2002 (UF & RUF 31).

The Court observes that Plaintiff's instant proffer regarding his reliance on the March 6 Letter is at odds with the evidence he submitted in opposition to the prior motion for summary judgment (before he disclosed his conservatorship in this proceeding).  Plaintiff submitted his July 6, 2020 declaration opposing the prior motion wherein he attests to requesting, receiving, reviewing, and along with his wife Fakhra relying upon the March 6 Letter by participating in the Hoover Street Property transaction.  (*See* Doc. 16-2 at 2-4.)  The Court had that declaration before it when it ruled on the prior motion.  (Doc. 22.)

In opposing the present motion (after disclosing the conservatorship), Plaintiff proffers evidence supporting an alternative and unplead theory, that his reliance upon the Letter was not in his individual capacity, but rather through Fakhra as his co-conservator and agent, and Hissan as his agent.  (Doc. 50 at 18-20.)  Petitioner, in the opposition, points to evidence that it was Fakhra and Hissan who read and relied on the March 6 Letter relative to the Hoover Street Property transaction.  (PAMF 12-13, 17-20.)  He points to evidence their reliance was reasonable because even the TPA's appellate specialist acknowledged the March 6 Letter "might have been misconstrued as there was no reference to the Policy provision for benefit reduction at age 65 only month's prior to [Plaintiff's] 65th birthday[.]" (PAMF 36; *see also* Doc. 50-33 at 2.)

But Plaintiff does not point to facts in the record that he disclosed his unpled represented status in dealings with Defendant, or as a participant in the Hoover Street Property transaction. Instead, the undisputed record before the Court is that Plaintiff acted in his individual capacity in these matters.  (*See* UF & RUF 35, 37, 38, 39, 40, 41.)  The record reflects that Plaintiff signed the Property purchase contract on March 7, 2018 in his individual capacity (Doc. 48-4 at 159); he signed the successful counteroffer on March 8, 2018 in his individual capacity (*id.* at 161, 176); and he individually purports to own 10% of the Hoover Street Property (Doc. 48-4 at 146, 162).

Furthermore, Plaintiff's conservatorship and lack of contractual capacity belies his creation of an agency relationship with Fakhra and/or Hissan relative to the matters in issue in this case. *See Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 877 (N.D. Ill. 2006) (both Illinois courts and the Seventh Circuit follow the Restatement of Agency); Restatement (Third) of Agency § 1.01 (2006) (A principal-agent relationship exists "when one person (a 'principal')

16

manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."); *Valenti v. Qualex, Inc.,* 970 F.2d 363, 368 (7th Cir.1992) ("The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.").  Here, the record before the Court reflects that the Fresno County Superior Court retains control over the conservatorship estate.  (*See* UF 31); *see also* Restatement (Third) Of Agency § 1.01 (2006).  An individual lacks capacity to act as a principal to the extent, at the time the agent takes action, the individual lacks capacity if acting in person.  *See* Restatement (Third) Of Agency § 3.04 (2006). Moreover, under Illinois law, an agent's authority is limited by equal dignity requirements including statute of frauds requirements.  *See* Restatement (Third) Of Agency § 3.02 (2006).   Illinois' statute of frauds requires that land sale contracts for a longer term than one year be in writing and signed by the party to be charged.  740 Ill. Comp. Stat. Ann. 80/2.

Even if Plaintiff, Fakhra and/or Hissan believed Plaintiff was represented in these matters, that belief alone would not be evidence creating a genuine dispute of fact.  See *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011) (subjective beliefs do not create genuine issues of material fact for trial). Though Plaintiff, in opposing summary judgment, is entitled to the benefit of reasonable inference, the inference must be raised by the facts in the record.  *Am. Int'l Grp., Inc.,* 926 F.2d at 836–37. The factual record does not raise an inference of Plaintiff's reasonable reliance in either an individual or represented capacity, for the reasons stated.

Additionally, Plaintiff does not point to facts in the record that Defendant was made aware that Plaintiff's interests were represented by his conservatorship.  For example, the Policy provides for payment of benefits to the guardian of an incompetent.  (*See* Doc. 48-6 at 22, 35; UF & RUF 31.) Thus, Defendant was unaware of any third-party reliance, and the Court finds its beyond dispute that Plaintiff did not rely, in an individual or represented capacity, on the March 6 Letter by participating in the Hoover Street Property transaction. Thus, equitable estoppel is not appropriate on these facts.  For the reasons stated, this is not a case where "conscience" and

17

"honest dealing" should estop Defendant from asserting the Benefit Reduction Provision due to the March 6 Letter. *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1391 (N.D. Ill. 1996) (citing *Ceres Illinois, Inc., v. Illinois Scrap Processing, Inc.*, 114 Ill. 2d 133, 148 (1986).

### 4. <u>Defendant's Reduction in Benefit Payments did not Breach the Policy</u>

Plaintiff's breach of contract claim is predicated upon the allegation that Defendant waived or was estopped from asserting the Policy's Benefit Reduction Provision, and that its September 1, 2018 reduction in benefit payments breached its obligations under the Policy. (Doc. 1 at 12-14.) For the reasons stated, the Court finds on the undisputed record that Defendant's assertion of the Benefit Reduction Provision on and after September 1, 2018 did not breach the Policy.

Furthermore, neither party disputes that (1) prior to September 1, 2018, Defendant paid Plaintiff a disability benefit of $10,000 per month, and (2) after September 1, 2018, Defendant paid Plaintiff a disability benefit of $2,500 per month. (UF & RUF 13, 25, 30; PAMF & RAMF 4, 20.) These monthly payments are consistent with the Policy and not a breach of it, for the reasons stated. Thus, the Court finds it to be undisputed that that Defendant did not breach the Policy as alleged in the Complaint's first cause of action. Accordingly, Defendant is entitled to summary judgment on the first cause of action.

### C.   Second Cause of Action – Illinois Insurance Code Section 155

Plaintiff alleges that Defendant breached the Policy's implied covenant of good faith and fair dealing by failing to reasonably, fairly, and in good faith investigate Plaintiff's claim to continued $10,000 per month benefit payments beyond age 65, and by maliciously, fraudulently, and oppressively denying the claim to reinstate full benefit payments. (Doc. 1 at 14-15.) Particularly, Plaintiff asserts that Defendant did not timely and fairly resolve his October 26, 2018 request for reconsideration and his January 2, 2019 appeal of the reduction in disability benefit payments, including his noted assertions of waiver and estoppel. (Doc. No. 50 at 11-12; *see* PAMF 22-41.) Based thereon, Plaintiff seeks damages, including punitive damages pursuant to California law. (Doc. 1 at 15-16 citing Cal. Civ. Code § 3294.)

Defendant revisits its above assertions that there was no factual dispute as to amounts owing under the Policy because it rightfully asserted the Policy's Benefit Reduction Provision. Based thereon, Defendant asserts the second cause of action, as pre-empted by Illinois Insurance Code Section 155, fails because there was no "vexatious and unreasonable" failure to pay under the Policy.[11]  (Doc. 51 at 7; *see also* Doc. 48-1 citing *Creation Supply, Inc. v. Selective Ins. Co. of the Southeast,* 995 F.3d 576, 579 (7th Cir. 2021) (Section 155 does not create a cause of action but rather "provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under [a] policy.").)

Under Illinois law, a court may award Section 155 attorney's fees, costs, and additional penalties only if the court determines that the insurer's denial of liability, dispute of the amount of the loss payable, or delay in settling a claim was "vexatious and unreasonable." *See John T. Doyle Tr. v. Country Mut. Ins. Co.,* 2014 IL App (2d) 121238 ¶ 28.  The determination of whether an insurer's actions were "vexatious and unreasonable" is within discretion of the district court. *See Medical Protective Co. v. Kim,* 507 F.3d 1076, 1086 (7th Cir. 2007); *LeDonne v. AXA Equitable Life Ins. Co.*, No. 05 C 1151, 2009 WL 3721038, at *7 (N.D. Ill. Nov. 2, 2009) (citing *Medical Protective Co. v. Kim,* 507 F.3d 1076, 1087 (7th Cir. 2007)) ("[I]f there is a bona fide dispute regarding coverage - meaning a dispute that is real, genuine, and not feigned - statutory sanctions are inappropriate.").

In determining whether an insurer's conduct rose to the level of "vexatious and unreasonable," the Court must consider the "totality of the circumstances."  *See TKK USA, Inc. v. Safety Nat. Cas. Corp.,* 727 F.3d 782, 793 (7th Cir. 2013).  Section 155 "appears to focus on the objective reasonableness of the insurer's refusal to pay." *Evaluation Sys., Inc. v. Aetna Life Ins. Co.*, 555 F. Supp. 116, 121 (N.D. Ill. 1982).  Even a wrongful denial of coverage, by itself, is not enough to warrant penalties for "vexatious and unreasonable" conduct.  *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 200 F.3d 1102, 1110 (7th Cir. 2000); *see also Rosalind*

---

[11] 215 Ill. Comp. Stat.§ 5/155 of the Illinois Insurance Code provides in pertinent part that "(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts. . . ."

1   *Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.,* 2014 IL App (1st) 113755 ¶¶ 108–18).

2   Rather, the denial must be "willful and without reasonable cause." *See Citizens First Nat'l Bank*

3   *of Princeton,* 200 F.3d at 1110.  An insurer's denial of coverage is not "vexatious and

4   unreasonable" if: (1) there is a *bona fide* dispute concerning the scope and application of

5   insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a

6   genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal

7   position on an unsettled issue of law.  *Chaudhry* 2014 WL 3511529, at *14; *John T. Doyle Tr.,*

8   2014 IL App (2d) 121238 ¶ 28. Here, the Court finds it to be undisputed that Defendant's alleged

9   conduct in the case did not violate Illinois Insurance Code Section 155, as discussed below.

10           1.    No "Vexacious and Unreasonable" Dispute of Benefit Payments

11          Defendant argues its dispute of Plaintiff's claim to $10,000 per month benefit payments

12   for his lifetime of total disability was bona fide and not in bad faith, for the same reasons it argued

13   above in the first cause of action.  Particularly, Defendant points to its proffer above that the

14   September 1, 2018 reduction in benefit payments was consistent with the Policy's fully

15   enforceable Benefit Reduction Provision.  (*See* Doc. 48-1 at 22 citing UF 8, 11, 13, 30; *C.J.M.,*

16   *Inc. v. Mid-Century Ins. Co.*, 563 F. Supp. 3d 826, 832 (N.D. Ill. 2021) ("Illinois law allows a

17   cause of action to proceed under Section 155 only if the insurer owes the insured benefits under

18   the terms of the policy.")); Doc. 51 at 7 citing UF Nos. 8, 11, 13, 24, 25, 30; *see also Lytle v.*

19   *Country Mut. Ins. Co.,* 2015 IL App (1st) 142169, ¶ 31, (holding insured was not entitled to

20   damages under Section 155 where insurer prevailed on the breach of contract claim).[12]

21          For the same reasons, Defendant assert that by raising a bona fide payment dispute and

22   Policy defense in response to Plaintiff's claim to $10,000 per month benefit payments for his

23   lifetime of total disability, it did not act "vexatiously or unreasonably" under Section 155.  (Doc.

24   48-1 at 23 and Doc. 51 at 7-8 citing UF Nos. 8, 9; *Citizens First Nat. Bank of Princeton,* 200 F.3d

25   at 1110 (An insurer's conduct is not vexatious and unreasonable if (1) there is a bona fide dispute

26   concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate

27   ─────────────

[12] As noted, the Court previously ruled that Section 155 of the Illinois Insurance Code preempts the second cause of action.  (Doc. 22 at 17.)  The Court therein observed the parties' agreement that Plaintiff proceeds on the second

28   cause of action as a state statutory claim.  (*Id.* at 16.)

1   policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4)

2   the insurer takes a reasonable legal position on an unsettled issue of law); *Sports Arena Mgmt.*

3   *Inc. v. Great Am. Ins. Grp.,* No. Civ.A. 06 C 0788, 2007 WL 684003, **4-5 (N.D. Ill. Mar. 1,

4   2007) (insurer entitled to summary judgment on Section 155 claim where insured failed to present

5   anything more than an honest dispute regarding liability under the policy).

6          Plaintiff, in his opposition to the motion, re-visits his above argument that the Benefit

7   Reduction Provision was unenforceable, and based thereon asserts there was no bona fide

8   payment dispute.  Plaintiff also points to Defendant's alleged bad faith failure to investigate and

9   resolve his request for reconsideration and appeal of the benefit payment claim.  (*See* Doc. 50 at

10  25; PAMF 32-40.)

11         The Court finds it to be undisputed that Defendant's exercise of the Benefit Reduction

12  Provision on and after September 1, 2018 was not a breach of its duties under the Policy, for the

13  reasons stated.  The Court rejects Petitioner's reprise of his above discussed arguments in this

14  regard.  (*See* Doc. 50 at 24-25; *see also Moore*, 2023 WL 4422879, at *5 (dismissing insured

15  physician's Section 155 claim under an AMA disability plan underwritten by Sentry, where the

16  subject reduction in benefit payments at age 65 occurred pursuant to the contract of insurance).

17         The Court, for the same reasons, finds on the undisputed facts that Defendant's dispute of

18  Plaintiff's claim to disability benefit payments of $10,000 per month on and after September 1,

19  2018 was bona fide, and not "vexatious or unreasonable" for purposes of Section 155.  *See*

20  *Johnson Press, Inc. v. Northern Ins. Co.,* 339 Ill. App. 3d 864, 890 (Ill. App. Ct. 2003) (defendant

21  insurer cannot be liable under Section 155 where no benefits are owed); *see also John T. Doyle*

22  *Tr.,* 2014 IL App (2d) 121238 ¶ 28; *Sports Arena Mgmt., Inc.,* 2007 WL 684003, at *4 (the

23  evidence must show the insurer's behavior was "willful and without reasonable cause.").  Thus,

24  the Court finds it to be undisputed that Defendant did not violate Illinois Insurance Code Section

25  155 by reducing Plaintiff's disability benefit payment amount pursuant to the Benefit Reduction

26  Provision, and upholding the determination on reconsideration and appeal, as alleged in the

27  Complaint's second cause of action. Defendant is entitled to summary judgment on the second

28  cause of action.

**D.      <u>Third Cause of Action – Negligent Misrepresentation</u>** [13]

Plaintiff's third cause of action incorporates his first cause of action for breach of contract and alleges that Defendant had no intention of honoring its promise in the March 6 Letter that Plaintiff would receive $10,000 per month benefit payments for his lifetime of total disability. (Doc. 1 at 16-17.)  Plaintiff alleges that Defendant intended he rely on the false promise because it was aware the March 6 Letter was requested for a mortgage loan.  (*Id.*)  Plaintiff alleges that he relied on the March 6 Letter, individually or through Fakhra and Hissan, by participating in the Hoover Street Property transaction.  (*Id.*; *see also* Doc. 50 at 25-30.)

Defendant, in the instant motion, asserts that on the undisputed factual record Plaintiff did not rely on the March 6 Letter by participating in the Hoover Street Property transaction, for the reasons discussed above in the first cause of action's estoppel analysis.  (*See* section IV B 3 a, *ante*; *see also* Doc. 48-1 at 25 citing *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1088 (1993) (a California cause of action for "deceit based on a misrepresentation" requires that the plaintiff actually relied on the misrepresentation).)  Defendant also asserts that there is no factual dispute that the March 6 Letter's alleged promised was not "positive and unequivocal" as required by California law, and thus not actionable.  (*See* Doc. 48-1 at 23-24; Doc. 51 at 8, 10.)

Under California law, the elements of negligent misrepresentation are (1) a misrepresentation of a material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) reasonable reliance by the plaintiff, and (5) damages.  *Finkelstein v. Guardian Life Ins. Co. of Am.*, No. C 07-01130 CRB, 2008 WL 8634992, at *14 (N.D. Cal. Nov. 23, 2008); *see also* Cal. Civ. Code §§ 1709, 1710.

The Court finds it to be undisputed on the factual record that Plaintiff did not rely upon the March 6 Letter in participating in the Hoover Street Property transaction, as discussed below. [14]

[13] The parties agree, at least implicitly, that the substantive law of California is applicable to the third and fourth causes of action.  (*See*  Doc. 22 at 11, 15, 17; Doc. 48-1 at 8, 23; Doc. 50 at 25-32.)  The Court applies California law to these causes of action.  *See Cleary v. News Corp.*, 30 F.3d 1255, 1265 (9th Cir. 1994) ("A district court in diversity jurisdiction must apply the law of the forum state to determine the choice of law."); *Am. Bank of Commerce v. Corondoni*, 169 Cal.App.3d 368, 372 (1985) (applying California's governmental interest test to circumstances where the plaintiff was resident in California and the tort occurred in California – to apply California's substantive law).

[14] The result would be the same under the nearly identical substantive law of Illinois.  *See Turubchuk v. S. Illinois Asphalt Co., Inc.*, 958 F.3d 541, 547 (7th Cir. 2020) *(*citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326 (2006) (the elements of negligent misrepresentation under Illinois law are (1) a false statement of material

1        **1.        Plaintiff did not Reasonably Rely on the March 6 Letter by Participating in**

2    **the Hoover Street Property Transaction**

3        The Court's discussion above regarding Plaintiff's alleged reliance upon the March 6

4    Letter through participation in the Hoover Street Property transaction in the first cause of action,

5    is equally applicable here.  (*See* section IV B 3 a, *ante*.)  The Court observes that Plaintiff

6    incorporates the first cause of action into this third cause of action and relies upon the same facts

7    here. It remains that Plaintiff, who brings this litigation and participated in the underlying Hoover

8    Street Property transaction in his individual capacity (Doc. 1; Doc. 51-1), was then the subject of

9    a California conservatorship of body and estate.[15]  (*Id.; see* section IV B 3 a, *ante*.)

10       For the reasons stated, the Court finds it to be undisputed that Plaintiff did not have the

11   capacity to contract and incur debt by participating in the Hoover Street Property transaction and

12   therefore could not have relied on the March 6 Letter in so doing.  (*Id.*)  For example, the record

13   reflects that Plaintiff did not involve himself in financial and legal matters, did not know the

14   extent of his financial assets, did not remember the March 6 Letter, did not review the loan

15   documents relating to the Hoover Street Property transaction, and did not know whether he

16   incurred financial obligation in the Hoover Street Property transaction - instead he left such

17   matters to his representatives, his wife and co-conservator Fakhra, and his son Hissan.  (*See* UF

18   17, 18, 31, 32, 33, 34, 37, 38, 42, 43, 44, 45, 46, 47, 48; *see also* Doc. 48-4 at 5, 6-7, 12, 16, 122,

19   139, 154-155, 174.)

20       Plaintiff again points to unpled alternative theories that he was represented in such matters

21   by Fakhra as his co-conservator and agent, and Hissan as his agent, who in turn reasonably relied

22   on the March 6 Letter by participating in the Hoover Street Property transaction.  (Doc. 50 at 25-

23   30 (citing *Mirkin*, 5 Cal. 4th at 1097-1098)) (representation made to a person acting as an agent of

24   ──────────────────────────────────────

25   fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to
     induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the

26   other party resulting from such reliance, and (6) a duty on the party making the statement to communicate accurate
     information).

27   [15] The record reflects Plaintiff withdrew a December 10, 2021 Declaration of Real Party in Interest proffered by
     Fakhra as his co-conservator, upon objection and motion to strike by Defendant and noticed hearing thereon.  (*See*

28   Doc. 43.)

1   the plaintiff is sufficient to establish reliance, even if that person does not repeat the

2   misrepresentation to the plaintiff.) However, these unplead represented status theories are

3   unsupported in the factual record and reasonable inference therefrom, for the reasons stated.  (*See*

4   section IV B 3 a, *ante*); *see also Rodriquez,* 668 F. Supp. 2d 1239, 1246 (allegation of agency not

5   plead in the complaint insufficient to defeat summary judgment).  Moreover, Plaintiff's conceded

6   lack of contractual capacity belies his creation of an agency relationship with Fakhra and/or

7   Hissan.  *See* Cal. Civ. Code § 2296 ("Any person having capacity to contract may appoint an

8   agent. . . ."); *Franklin v. Santa Barbara Cottage Hosp.*, 82 Cal. App. 5th 395, 404 (2022) (citing

9   *Edwards v. Freeman* (1949) 34 Cal.2d 589, 592) ('The doctrine of *respondeat superior* sought

10   here to be invoked . . . must necessarily be based upon a relationship between two parties by

11   which one has the legal right to direct the activities of the other and the latter the legal duty to

12   submit to such direction.' ").

13        Furthermore, under California law, real property transactions by an agent are subject to

14   statute of fraud requirements, unmet on the record before the Court.  *See* Cal. Civ. Code

15   § 1624(a)(3) (an agreement for the sale of real property, or of an interest therein if made by an

16   agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing,

17   subscribed by the party sought to be charged); *see also Henderson v. United Student Aid Funds,*

18   *Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May

19   6, 2019) (whether an agency relationship exists is for a court to decide based on an assessment of

20   the facts of the relationship and not based on how the parties define their relationship). Thus, the

21   Court finds it to be undisputed that Plaintiff did not reasonably rely on the March 6 Letter by

22   participating in the Hoover Street Property transaction, as alleged in the Complaint's third cause

23   of action. Accordingly, Defendant is entitled to summary judgment on the third cause of action.

24   **E.      Fourth Cause of Action – Fraud** [16]

25        Plaintiff, in the Complaint, incorporates his first cause of action for breach of contract, and

26   alleges that Defendant intentionally deceived Plaintiff by its representation in the March 6 Letter

27   that he would receive $10,000 per month benefit payments for his lifetime of total disability, and

---

28   [16] See n.21.

fraudulently sought to induce Plaintiff to rely on the representation, which Plaintiff did by participating in the Hoover Street Property transaction. (Doc. 1 at 17-18; *see also* Doc. 50 at 26-29.)

Defendant argues the March 6 Letter did not include its intentionally false representation; Plaintiff did not rely on the Letter by participating in the Hoover Street Property transaction; and the Letter's alleged false representation did not cause Plaintiff to participate in that transaction. (*See* Doc. 48-1 at 25-28 *see also* Doc. 51 at 8-11.)

Under California law, the "elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979, 990 (2004); *Finkelstein*, 2008 WL 8634992, at *14 (same). "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1239 (1995).

The Court finds it to be undisputed on the factual record that the March 6 Letter did not include Defendant's intentionally false representation, and Plaintiff did not justifiably rely on the Letter's alleged false representation by participating in the Hoover Street Property transaction, as discussed below.[17]

### 1.   <u>No Intentionally False Representation</u>

Defendant, in the motion, asserts the March 6 Letter did not contain its knowingly false representation. Defendant points to evidence that neither it nor Davis believed the March 6 Letter included any false statement. (UF No. 19-22.) It points to evidence that the March 6 Letter stated

---

[17] The result would be the same under the nearly identical substantive law of Illinois. *See General Motors Acceptance Corp. v. Central Nat'l Bank,* 773 F.2d 771, 778 (7th Cir.1985) ("The elements of fraud in Illinois are well-established. To prevail in a fraud action, the plaintiff must prove: (1) the defendant made false statements of material fact, and not of opinion; (2) knowing the statements were false; (3) intending that the plaintiff rely on them; (4) that plaintiff did rely on those statements; (5) that this reliance was justified; and (6) that the plaintiff was damaged thereby.").

1   Plaintiff's then "current" monthly benefit payment under the Policy, and that he was entitled to "a

2   lifetime disability benefit" thereunder.  (Doc. 48-1 at 28 and Doc. 51 at 11 citing UF Nos. 8, 10,

3   11, 13, 16, 19-22 and 24.)

4          Defendant also asserts that even if the Letter included a false representation, it is not

5   chargeable with knowledge of falsity, and it did not intend to deceive Plaintiff.  (Doc. 48-1 at 28

6   citing UF 19-22; *Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.,* 225

7   F.Supp.3d 1034, 1042 (N.D. Cal. 2016) (granting summary judgment on fraud claim where

8   plaintiff failed to produce evidence of scienter); *Goodworth Holdings Inc. v. Suh,* 239 F.Supp.2d

9   947, 961 (N.D. Cal. 2002) (the intent to defraud is a required element of a fraud claim and, in

10  opposing summary judgment, a plaintiff must offer evidence of such intent); *Beckwith v. Dahl*,

11  205 Cal. App. 4th 1039, 1061-62 (2012) (citing *Lazar v. Superior Court,* 12 Cal. 4th 631, 638

12  (Cal. 1996) ("A promise is only false if the promisor did not intend to perform the promise when

13  it was made, i.e., had knowledge of its falsity.").

14         Plaintiff, in his opposition to the motion, asserts the March 6 Letter was deceitful, at least

15  inferentially, by falsely promising him $10,000 per month benefit payments for his lifetime of

16  total disability, and fraudulently induced him to enter the Hoover Street Property transaction.

17  (*See* Doc. 50 at 31 citing *Gagne v. Bertran*, 43 Cal. 2d 481, 488 n.5, (1954); *De Zemplen v. Home*

18  *Fed. Sav. & Loan Ass'n*, 221 Cal. App. 2d 197, 207 (1963).)  He asserts that Davis was authorized

19  by Defendant to handle his long-term disability benefit claim including issuance of the March 6

20  Letter.  (RUF 23*; see also* Doc. 50-7 at 22.)  He asserts the March 6 Letter also suppressed the

21  fact the Benefit Reduction Provision would kick-in 6 months later, a fact Defendant was bound to

22  disclose.  (*See* Doc. 50 at 29-31 citing Cal. Civ. Code § 1710(3); UF 4, 6, 7, 8, 11, 13-14, 20;

23  PAMF 10, 34-36; Cal. Civ. Code §§ 1572, 1710(3); *Brownlee v. Vang*, 235 Cal. App. 2d 465, 477

24  (1965) (discussing the duty to provide full and fair disclosure).)

25         Particularly, Plaintiff supports these assertions by pointing to evidence that the Policy's

26  Benefit Reduction Provision is inconsistent with the March 6 Letter.  (*Id.*)  He points to evidence

27  that Defendant's TPA conceded as much, that the March 6 Letter was "less than ideal[,]" and

28  inferred a lifetime benefit of $10,000/month.  (Doc. 50 at 29-16-17 citing PAMF 10, 34-36; Doc.

50-29 at 1-3.)  However, Plaintiff does not point to facts in the record or reasonable inference therefrom that Davis, and by extension Defendant, considered the Policy's then-dormant Benefit Reduction Provision when preparing the March 6 Letter.  The Court finds no dispute in the factual record that the March 6 Letter does not refer to the Benefit Reduction Provision (UF & RUF 16), and Davis did not take into account the not-yet-effective Provision in preparing the Letter.  (UF & RUF 19; *see also* Doc. 48-4 at 98; Doc. 50-15 at 28, 30-31.)  The Court is unpersuaded that inconsistency between the March 6 Letter and the Benefit Reduction Provision alone raises an inference of scienter.  Thus, the Court finds the factual record does not show or reasonably raise an inference that Davis, in her March 6 Letter, made an intentionally false statement.

**2.      Plaintiff did not Justifiably Rely on the March 6 Letter by Participating in the Hoover Street Property Transaction**

The Court's discussion in the first and third causes of action regarding Plaintiff's alleged reliance upon the March 6 Letter by his participation in the Hoover Street Property transaction is equally applicable here.  (*See* sections IV B 3 a, IV D 1, *ante*.)  For the reasons stated, the Court finds it to be undisputed that Plaintiff did not have the capacity to contract and incur debt by participating in the Hoover Street Property transaction and could not have relied on the March 6 Letter in so doing in his individual capacity.  (*Id.*)

The Court also finds it to be undisputed that Plaintiff was not represented by Fakhra as his co-conservator and/or agent, and by Hissan as his agent, in these matters.  (*Id.*)  Here again, Plaintiff's conceded lack of contractual capacity belies his creation of an agency relationship with Fakhra and/or Hissan relative to such matters (*see* Cal. Civ. Code § 2296), and in any event such a representative relationship as to the Hoover Street Property transaction is precluded by California's statute of frauds (*see* Cal. Civ. Code § 1624(a)(3)). Thus, the Court finds it to be undisputed that Plaintiff did not justifiably rely on the March 6 Letter by participating in the Hoover Street Property transaction, as alleged in the Complaint's fourth cause of action. Accordingly, Defendant is entitled to summary judgment on the fourth cause of action.

**F.      Punitive Damages**

Plaintiff, in the Complaint's second and fourth causes of action, seeks punitive damages

under California law on grounds Defendant, its officers, directors, and/or managing agents engaged in or ratified fraudulent, malicious, or oppressive conduct alleged therein.  (*See* Doc. 1 at 15-16, 17-18, citing Cal. Civ. Code § 3294.) Defendant asserts that punitive damages are unavailable under Illinois law as to the second cause of action and unavailable under California law as to the Fourth cause of action.  The Court finds Defendant is entitled to summary judgment on the punitive damages claims, for the reasons discussed below.

### 1.      Second Cause of Action

#### a.      Punitive Damages under Illinois Law

Defendant asserts that Illinois Insurance Code Section 155, which the Court previously determined controls the second cause of action, does not provide for punitive damages.  (*See* section IV C, *ante,* discussing Section 155; *see also* Doc. 48-1 at 29 n.3 citing Doc. 22 at 17.) The Court agrees.  *See e.g., Combs v. Ins. Co. of Illinois*, 146 Ill. App. 3d 957, 962 (1986) (punitive damages unavailable under Section 155); *Heller Int'l Corp. v. Sharp*, No. 85C 3381, 1990 WL 43379, at *1 (N.D. Ill. Mar. 29, 1990) (same); *Barr Co. v. Safeco Ins. Co. of Am.*, 583 F. Supp. 248, 256 (N.D. Ill. 1984), *on reconsideration in part*, 706 F. Supp. 616 (N.D. Ill. 1989) (holding that Section 155 preempts claim for punitive damages); *UNR Indus., Inc. v. Cont'l Ins. Co.,* 607 F. Supp. 855, 866 (N.D. Ill. 1984) (same). Plaintiff does not argue or provide authority otherwise.  (*See* Doc. 50 at 32-33.) Thus, the Court, for the reasons stated, finds it to be undisputed that punitive damages are unavailable on the second cause of action. Defendant is entitled to summary judgment on the punitive damages claim in the second cause of action.

### 2.      Fourth Cause of Action

#### a.      Punitive Damages under California Law

"In order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by clear and convincing evidence that the insurer has acted maliciously, oppressively or fraudulently."  *Mock v. Michigan Millers Mutual Ins. Co.,* 4 Cal. App. 4th 306, 328 (1992). California Civil Code Section 3294 in pertinent part provides that:

>        (a) In an action for the breach of an obligation not arising from

contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

(c) As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Defendant asserts that it is not liable for punitive damages under California law because its officers, directors, or managing agents were not personally involved with and did not ratify Davis's alleged fraudulent conduct. (Doc. 48-1 at 28-30 citing Cal. Civ. Code § 3294(b).) Defendant points to evidence that TPA claims analyst Davis, who authored the March 6 Letter, was not within its group of officers, directors, and managing agents for purposes of Section 3294(b). (*Id.* citing UF 16, 19, 23; *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 168 (2000) ("Whether the corporation will be liable for punitive damages depends, not on the nature of the consequences, but rather on whether the malicious employee belongs to the leadership group of 'officers, directors, and managing agents.' ").) Defendant also observes the lack of evidence that its officer, director, or managing agent knew of the March 6 Letter before it was sent, and authorized or ratified the Letter. (*See* Doc. 48-1 at 30.)

Liability under Section 3294 is raised by conduct of a corporate actor who possess policy-

29

making authority.  *See Tilkey v. Allstate Ins. Co.,* 56 Cal. App. 5th 521, 554 (2020) (citing *White v. Ultramar, Inc.,* 21 Cal.4th 563, 566-567 (1999) ("managing agent" includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy."); *see also Salgado v. Iqvia, Inc.*, 459 F. Supp. 3d 1318, 1338 (S.D. Cal. 2020) (plaintiff must show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business).

Plaintiff, in opposing the motion, points to evidence that Davis was authorized to write and send the March 6, 2018 Letter, and based thereon raises an inference that Davis acted as Defendant's managing agent.  (*See* Doc. 50 at 32-33.)  However, Plaintiff has not pointed to facts in the record that Defendant, through its officer, director, or managing agent, authorized, ratified, or engaged in malicious, oppressive, or fraudulent conduct for purposes of California Civil Code Section 3294.

As a threshold matter, the punitive damages claim fails because on the undisputed factual record and for the reasons stated, Defendant is entitled to summary judgment on the predicate fourth cause of action for fraud including its incorporated first cause of action for breach of contract claim.  (*See* sections IV B, IV E, *ante*); *Bernstein*, 670 F. Supp. 3d at 1034 (quoting *Adams v. Allstate Ins. Co.,* 187 F. Supp. 2d 1219, 1231 (C.D. Cal. 2002)) (in a California insurance bad faith claim, a plaintiff who is not able to survive summary judgment on that claim is also unable to survive summary judgment on a related claim for punitive damages); *see also Reid v. SmithKline Beecham Corp.*, 366 F. Supp. 2d 989, 1001 (S.D. Cal. 2005) (to prevail on punitive damages claim against a corporate employer under California law, plaintiff must prove by clear and convincing evidence that employer was guilty of oppression, malice, or fraud); *Butte Fire Cases*, 24 Cal. App. 5th 1150, 1159 (2018), *as modified on denial of reh'g* (July 26, 2018) (summary judgment on the issue of punitive damages is proper when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression).

Particularly, as to the incorporated breach of contract claim, the Court has observed that:

> [S]imple breach of contract, no matter how willful and hence

tortious, is not ground for punitive damages. Such damages are accessible only upon a showing that the defendant 'act[ed] with the intent to vex, injure, or annoy.' " *Id.* at 1286, 31 Cal.Rptr.2d 433, quoting *Neal v. Farmers Ins. Exchange,* 21 Cal.3d 910, 922, 148 Cal.Rptr. 389, 582 P.2d 980 (1978). The law does not favor such damages unless there is the requisite showing of malice, oppression or fraud. *Beck v. State Farm Mut. Auto. Ins. Co.,* 54 Cal.App.3d 347, 126 Cal.Rptr. 602 (1976) (they should be granted with the greatest caution).

*Hergenroeder v. Travelers Prop. Cas. Ins. Co.*, 249 F.R.D. 595, 618 (E.D. Cal. 2008).

As to the fourth cause of action's fraud count, Plaintiff has not pointed to facts in the record that Defendant's director, officer, or managing agent authorized, ratified, or knew of and participated in malicious, oppressive, or fraudulent conduct for purposes of Section 3294(b).  *See e.g., Rodriguez v. Laboratory Corporation of America*, 623 F. Supp. 3d 1047, 1058 (C.D. Cal. 2022) (corporate employer's ratification of an employee's conduct in punitive damages context requires actual knowledge of conduct and its outrageous nature).  The Court in *Hergenroeder* stated that:

With respect to corporate employers, liability is limited to imputation of conduct to the officers, directors or managing agents of the corporation because "[t]his is the group whose intentions guide corporate conduct." *Cruz v. HomeBase,* 83 Cal.App.4th 160, 167, 99 Cal.Rptr.2d 435 (2000). "By so confining liability, the statute avoids punishing the corporation for malice of low-level employees which does not reflect the corporate 'state of mind' or the intentions of corporate leaders. This assures that punishment is imposed only if the corporation can be fairly be viewed as guilty of the evil intent sought to be punished." *Id.*

The California Supreme Court has defined "managing agent" within the meaning of California Civil Code § 3294(b) to be an employee with "broad discretion" that exercises "policymaking authority." *Egan v. Mutual Omaha Ins. Co.,* 24 Cal.3d 809, 823, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). "[T]he critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy. When employees dispose of insureds' claims with little if any supervision, they possess sufficient discretion for the law to impute their actions concerning those claims to the corporation." *Id.* at 822–23, 169 Cal.Rptr. 691, 620 P.2d 141. In *White v. Ultramar, Inc.,* 21 Cal.4th 563, 88 Cal.Rptr.2d 19, 981 P.2d 944 (1999), the California Supreme Court provided further guidance stating:

In order to demonstrate that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial

1          discretionary authority over significant aspects of a
2          corporation's business. 21 Cal.4th at 577, 88 Cal.Rptr.2d 19, 981 P.2d 944.

3  *Hergenroeder*, 249 F.R.D. at 618–19.

4          Plaintiff points only to evidence that Davis prepared the March 6 Letter, and based thereon

5  asserts that Davis acted as Defendant's managing agent.  (*See* Doc. 50 at 32-33 citing to PAMF

6  10.)  But as discussed above, the undisputed record shows that the TPA and Davis as its employee

7  were authorized only to implement, not change, the Policy.  (*See* section IV B 2 a, *ante*; UF &

8  RUF 14, 19, 23; PAMF & RAMF 11, 37); *Cruz*, 83 Cal. App. 4th at 168 ("Whether the

9  corporation will be liable for punitive damages depends . . . on whether the malicious employee

10  belongs to the leadership group of 'officers, directors, and managing agents.' ")

11          The Court finds in the undisputed evidence before it that Davis, like the insurance adjuster

12  found not to be a managing agent in *Hergenroeder*, lacked broad discretion and the ability to

13  make corporate policy decisions and determine corporate policy for Defendant.  *See*

14  *Hergenroeder*, 249 F.R.D. at 618-19 (citing *Egan v. Mutual Omaha Ins. Co.,* 24 Cal.3d 809, 823

15  (1979)).  As discussed above, Davis and the TPA employing her had no discretion to deviate from

16  the Policy while processing Plaintiff's claim for benefit payments thereunder.  (*See* section IV B 2

17  a; UF & RUF 23.)  For example, the TPA, in upholding on appeal Davis's September 1, 2018

18  benefit reduction pursuant to the Benefit Reduction Provision, first requested and received

19  Defendant's approval.  (*See* Doc. 50-14 at 14-15, 26-27; Doc. 50-31 at 1; PAMF & RAMF 37.)

20          In this case, Davis did not have authority to grant Plaintiff's claim to $10,000 per month

21  benefit payments for his lifetime of disability because the Policy required benefit payment

22  reduction at age 65.  *See Hergenroeder*, 249 F.R.D. at 620. Furthermore, as in *Hergenroeder*,

23  Plaintiff has not provided evidence of any other employees of the insurer defendant who had the

24  requisite level of authority to qualify as a "managing agent" within the meaning of California

25  Civil Code § 3294(b).  *Id.*  Nor is the fact that Davis authored the March 6 Letter (*see* PAMF &

26  RAMP 10) alone such evidence, for the reasons stated.  (*See* section IV E 1.)

27          The Court finds Plaintiff's reliance upon *Kiseskey v. Carpenters' Trust for So. California*,

28  144 Cal. App. 3d 222, 234-235 (Ct. App. 1983), in support of his above assertions, is misplaced.

1  (*See* Doc. 50 at 32-33.)  As Defendant observes, *Kiseskey's* discussion of a punitive damages in

2  the context of ordinary *respondeat superior* liability does not address issues of corporate liability

3  for punitives pursuant to Subsection 3294(b).  (*See* Doc. 51 at 11.)

4        Finally, Plaintiff does not argue or point to facts that Defendant's employee Cindy

5  Bouchard, who approved TPA appeal specialist Nancy Hyndman's rejection of Plaintiff's request

6  for reconsideration and appeal based upon application of the Policy's Benefit Reduction

7  Provision, exercised substantial corporate authority for purposes of Section 3294(b).  (*See* Doc.

8  50-31.)  Thus, the Court, for the reasons stated, finds it to be undisputed that punitive damages are

9  unavailable on the fourth cause of action.  Accordingly, Defendant is entitled to summary

10 judgment on the punitive damages claim in the fourth cause of action.

11 **G.**    **Conservatorship as Real Party in Interest**

12       Even if Defendant were not entitled to summary judgment, the Court finds this case would

13 be subject to dismissal for failure to prosecute in the name of the real party in interest.  *See* Fed.

14 R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.").  A

15 court must look to the law of the state of the individual's domicile to determine whether that

16 party, not acting in a representative capacity, has capacity to sue or be sued in an action in federal

17 court. Fed. R. Civ. P. 17(b)(1).  Here, California rules regarding capacity to bring or defend a

18 legal claim apply because Plaintiff is domiciled in California.  (*See* Doc. 48-4 at 4.)

19       California Code of Civil Procedure section 372(a) provides, in relevant part:

20
21
22
> When a minor, an incompetent person, or a person for whom a conservator has been appointed is a party, that person shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case.

23 Cal. Civ. Code Civ. P. § 372(a); *see also* Cal. Prob. Code § 1872 ("(a) Except as otherwise

24 provided in this article, the appointment of a conservator of the estate is an adjudication that the

25 conservatee lacks the legal capacity to enter into or make any transaction that binds or obligates

26 the conservatorship estate).

27       The Federal Rules of Civil Procedure are in accord that a conservator may sue on behalf

28 of an incompetent person.  *See* Fed. R. Civ. P. 17(c)(1)(C); *see also Hogan v. Robinson*, No. CV-

1   F-03-6408AWILJO, 2007 WL 419483, at *3 (E.D. Cal. Feb. 5, 2007) ("With the continuation of

2   the conservatorship, under California law, there is an adjudication that the conservatee lacks the

3   legal capacity."); *Finnegan v. Marshack*, No. 8:22-CV-00288 JVS JDEx, 2022 WL 3013057, at

4   *2 (C.D. Cal. Apr. 28, 2022) (a party currently under a state-court appointed conservatorship is

5   incompetent to sue on his own behalf in federal court).

6        The noted undisputed record reflects that Plaintiff has been the subject of a California

7   conservatorship of body and estate from and after 2002.  (UF & RUF 31; *see also* UF & RUF 32-

8   34.)  The Court's docket reflects that: (i) on December 10, 2021, Plaintiff's counsel filed a

9   declaration of real party in interest, co-conservator Fakhra, which included her request on behalf

10   of the conservatorship to ratify this litigation, pursuant to Federal Rule of Civil Procedure 17

11   (Doc. 32), (ii) Defendant objected to the declaration including ratification, joinder, or substitution

12   of the conservatorship in the case, and moved to strike the declaration (Doc. 33, 36), (iii)

13   following a contested hearing before the assigned United States Magistrate Judge, Plaintiff

14   withdrew the declaration (Doc. 42), and (iv) the Court denied as moot Defendant's objection and

15   request to strike (Doc. 43).

16        Under the above noted standard, while courts cannot immediately dismiss an action for

17   failure to prosecute in the name of the real party in interest, they may do so "after an objection,

18   [once] a reasonable time has been allowed for the real party in interest to ratify, join, or be

19   substituted into the action."  Fed. R. Civ. P. 17(a)(3).

20        Here, the Court observes that more than two years have passed since Defendant objected

21   to Plaintiff's filing of Fakhra's declaration seeking to ratify these proceedings on behalf of the

22   conservatorship.  Although Defendant's objection was denied as moot, the Court finds the

23   objection sufficient for purposes of Rule 17(a)(3).  The Court's docket reflects that Plaintiff has

24   not further addressed the conservatorship's status as real party in interest in any manner provided

25   in Federal Rule of Civil Procedure Section 17(a)(3). Therefore, even if Defendant were not

26   entitled to summary judgment, dismissal would be proper under Rule 17.  See e.g., *Baumgartner*

27   *v. State Farm Fire & Cas. Co.,* 244 F. Supp. 3d 1361, 1367 (N.D. Ga. 2017) (dismissal under

28   Rule 17 for failure to prosecute in the name of the real party in interest would be proper where

that failure continued for one and one-half years).

**H.     Conclusions**

    1.     The parties' evidentiary objections lack merit.

    2.     The undisputed material facts in this case are that: (i) Plaintiff's Policy includes a Benefit Reduction Provision effective upon his reaching 65 years of age, (ii) Plaintiff has been the subject of a California conservatorship of body and estate from and after 2002 and during that time lacked the capacity to enter contract and incur debt, (iii) Plaintiff participated in the Hoover Street Property transaction, and prosecutes this action, solely in his individual capacity, (iv) Davis did not consider the Policy's Benefit Reduction Provision when she prepared the March 6 Letter, and (v) Davis was not an officer, directors, or managing agent of Defendant.

    3.     Defendant did not waive the Benefit Reduction Provision.

    4.     Plaintiff did not reasonably and justifiable rely on the March 6, Letter by participating in the Hoover Street Property transaction.

    5.     Defendant's September 1, 2018 reduction in benefit payments was not a breach of the Policy,

    6.     Defendant's September 1, 2018 reduction in benefit payments was not "vexatious or unreasonable" for purposes of Illinois Insurance Code Section 155.

    7.     The March 6 Letter did not include Defendant's intentionally false statement.

    8.     Punitive damages are unavailable under Illinois law,

    9.     Punitive damages are inappropriate under California law.

    10.     The plaintiff real party in interest is Plaintiff's California conservatorship.

**ACCORDINGLY**, the Court **ORDERS**:

    1.     Evidentiary objections lodged by Plaintiff are **OVERRULED**.

    2.     Evidentiary objections lodged by Defendant are **OVERRULED**.

    3.     Defendant's motion for summary judgment (Doc. 48) is **GRANTED** in its entirety.

4.      The **CLERK** is directed to **ENTER JUDGMENT** for Defendant and **CLOSE** the case.

IT IS SO ORDERED.

Dated:   **March 29, 2024**

UNITED STATES DISTRICT JUDGE